UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

STEVEN W. SAMPSON, TRUSTEE,                          :
                                                     :
                        Plaintiff,                   :
                                                     :
        -against-                                    :        07 Civ. 6890 (PAC)
                                                     :
JAMES D. ROBINSON III, LEWIS B. CAMPBELL,            :        **FILED**
JAMES M. CORNELIUS, LAURIE H. GLIMCHER,              :        **ELECTRONICALLY**
M.D., VICKI L. SATO, PH.D., LEIF JOHANSSON,          :
LOUIS J. FREEH, MICHAEL GROBSTEIN, and               :
R. SANDERS WILLIAMS, M.D.,                            :
                                                     :
                        Defendants,                  :
                                                     :
                and                                  :
                                                     :
BRISTOL-MYERS SQUIBB COMPANY,                        :
                                                     :
                        Nominal Defendant.           :
                                                     :
------------------------------------------------------------------------x

## MEMORANDUM OF LAW OF BRISTOL-MYERS SQUIBB COMPANY
## AND THE DIRECTOR DEFENDANTS IN SUPPORT OF MOTION TO DISMISS

Lorin L. Reisner                          Kenneth Conboy
Michael R. Potenza                        LATHAM & WATKINS LLP
Timothy T. Howard                         885 Third Avenue
DEBEVOISE & PLIMPTON LLP                  New York, New York 10022
919 Third Avenue                          (212) 906-1200
New York, New York 10022
(212) 909-6000

*Attorneys for Nominal Defendant Bristol-*      *Attorneys for Defendants James D. Robinson*
*Myers Squibb Company*                          *III, Lewis B. Campbell, James M. Cornelius,*
                                                *Laurie H. Glimcher, M.D., Vicki L. Sato, Ph.D,*
                                                *Leif Johansson, Louis J. Freeh, Michael*
                                                *Grobstein and R. Sanders Williams, M.D.*


Dated:    New York, New York
          November 12, 2007

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND..........................................................................................5

I.      BMS and its Board of Directors.......................................................................5

II.     Plaintiff's Allegations. ......................................................................................7

ARGUMENT ...............................................................................................................11

I.      THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF
        FAILED TO SATISFY THE DEMAND REQUIREMENT.................................11

        A.      Delaware Law Governs the Applicable Demand Requirements. ..............11

        B.      Only Particularized Factual Allegations Creating a Reasonable
                Doubt that a Majority of Directors Could Respond to a Demand
                With Independence and Disinterest May Excuse Plaintiff's Failure
                to Make a Pre-Litigation Demand............................................................13

        C.      Plaintiff Has Failed to Allege Particularized Facts Creating a
                Reason to Doubt the Independence or Disinterest of the Board...............14

        D.      Plaintiff's Remaining Allegations Do Not Excuse Demand.....................22

CONCLUSION............................................................................................................24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ferre v. McGrath*,
06-CV-1684 (CM), 2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007) ........................ *passim*

*Fink v. Weill*,
02-CV-10250 (LTS), 2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005) ...........................24

*Halpert Enterprises, Inc. v. Harrison*,
362 F. Supp. 2d 426 (S.D.N.Y. 2005) ...........................................................12, 13, 15, 23

*Halpert Enterprises, Inc. v. Harrison*,
02-CV-9501 (SHS), 2005 WL 1773686 (S.D.N.Y. Jul. 26, 2005) .....................4, 19, 21

*In re Forest Laboratories, Inc. Deriv. Litigation*,
450 F. Supp. 2d 379 (S.D.N.Y. 2006) ...........................................................16

*In re IAC/InterActiveCorp Securities Litigation*,
478 F. Supp. 2d 574 (S.D.N.Y. 2007) ...........................................................24

*In re Pfizer Inc. Derivative Sec. Litigation*,
503 F. Supp. 2d 680 (S.D.N.Y. 2007) ...........................................................12, 15, 19, 20

*In re Xenthanol Corp. Deriv. Litig.*,
06-CV-15536 (HB), 2007 WL 2331975, at *4 (S.D.N.Y. Aug. 16, 2007) ...................16

*Kamen v. Kemper Finance Services Inc.*,
500 U.S. 90 (1991) ....................................................................................11

*Kramer v. Time Warner, Inc.*,
937 F.2d 767 (2d Cir. 1991) ........................................................................6

*Lewis v. Graves*,
701 F.2d 245 (2d Cir. 1983) ........................................................................15, 16

*Leykin v. AT&T Corp.*,
423 F. Supp. 2d 229 (S.D.N.Y. 2006) ...........................................................6

*Loveman v. Lauder*,
484 F. Supp. 2d 259 (S.D.N.Y. 2005) ...........................................12, 13, 14, 15, 16, 23

22603379v1

*RCM Sec. Fund, Inc. v. Stanton*,
  928 F.2d 1318 (2d Cir. 1991) .......................................................................11

*Rivera-Powell v. New York City Board of Elections*,
  470 F.3d 458 (2d Cir. 2006) ........................................................................22

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007) ..........................................................................6

*Sanofi-Synthelabo v. Apotex, Inc.*,
  488 F. Supp. 2d 317 (S.D.N.Y. 2006) ............................................................9

*Sanofi-Synthelabo v. Apotex, Inc.*,
  492 F. Supp. 2d 353 (S.D.N.Y. 2007) ..........................................................10

*Sec. Investor Protection Corp. v. BDO Seidman, LLP*,
  222 F.3d 63 (2d Cir. 2000) ............................................................................5

*Shields v. Erickson*,
  710 F. Supp. 686 (N.D. Ill. 1989) ...............................................................17

## STATE CASES

*Andreae v. Andreae*,
  C.A. No. 11905, 1992 WL 43924 (Del. Ch. Mar. 5, 1992) ...........................23

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984)............................................................2, 12, 15, 22, 23

*Ash v. McCall*,
  C.A. No. 17132, 2000 WL 1370341 (Del. Ch. Sept. 15, 2000) ....................17

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000).....................................................2, 12, 13, 14, 17

*Grimes v. Donald*,
  673 A.2d 1207 (Del. 1996)....................................................................12, 15

*Grobow v. Perot*,
  526 A.2d 914 (Del. Ch. 1987) ......................................................................14

iii

*Grobow v. Perot*,
   539 A.2d 180 (Del. 1988)............................................................................................14

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003) ...................................................14, 15, 17, 19, 20, 22, 23

*In re Caremark International Inc. Deriv. Litigation*,
   698 A.2d 959 (Del. Ch. 1996) ..............................................................................3, 18, 19

*Kaufman v. Belmont*,
   479 A.2d 282 (Del. Ch. 1984) .....................................................................................13

*Levine v. Smith*,
   591 A.2d 194 (Del. 1991)..........................................................................................12, 13

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993)..............................................................12, 13, 14, 15, 17, 23

*Rattner v. Bidzos*,
   C.A. No. 19700, 2003 Del. Ch. LEXIS 103 (Del. Ch. Sept. 30, 2003) ..................15, 16

*Richardson v. Graves*,
   C.A. No. 6617, 1983 WL 21109 (Del. Ch. June 17, 1983)...........................................17

*Seminaris v. Landa*,
   662 A.2d 1350 (Del. Ch. 1995) .....................................................................................15

*Simon v. Becherer*,
   7 A.D.3d 66, 775 N.Y.S.2d 313 (1st Dept. 2004) ........................................................16

*Stone v. Ritter*,
   911 A.2d 362 (Del. 2006)..........................................................................................18, 19

*White v. Panic*,
   783 A.2d 543 (Del. 2001)............................................................................................2, 12

## STATUTES AND RULES

8 Del. C. § 220 ........................................................................................................17

18 U.S.C. § 1001 ....................................................................................................10

Del. Code Ann. Tit. 8 § 141(a) ..............................................................................12

Fed. R. Civ. P. 23.1 .............................................................................................1, 13

v

Nominal Defendant Bristol Myers Squibb Company ("BMS" or the "Company") and the members of the BMS Board of Directors, all of whom are named as defendants (the "Director Defendants"), submit this memorandum of law and the accompanying declaration of Lorin L. Reisner ("Reisner Decl.") in support of their motion to dismiss the Amended Verified Shareholder Derivative Complaint ("Am. Complaint").

## PRELIMINARY STATEMENT

This lawsuit purports to be a derivative action brought on behalf of BMS by an individual who claims status as a shareholder.  Am. Complaint ¶¶ 1, 23.  The Amended Complaint alleges that the Director Defendants breached their fiduciary duties in connection with attempts by the Company to settle patent litigation involving the prescription pharmaceutical product Plavix.  In particular, plaintiff alleges that a settlement agreement submitted by BMS to the U.S. Federal Trade Commission ("FTC") for its review and approval contained terms that were unlawful, and that a former BMS executive agreed to additional terms that were not disclosed to the FTC.  Am. Complaint ¶¶ 2, 8.  This action fails at the threshold, however, from a fundamental legal defect: plaintiff has not, and cannot, establish standing to assert claims that belong to the Company.

Under settled principles of corporate governance, a company's Board of Directors manages the company's business affairs and controls decisions about whether, when, and how to pursue corporate claims.  A shareholder therefore is required to make a pre-litigation demand upon the Board in order to allow the directors to exercise their *own* business judgment about whether to pursue litigation.  *See* Fed. R. Civ. P. 23.1.  The pre-

suit demand requirement flows from "the fundamental precept" under applicable Delaware law that "directors manage the business and affairs of a corporation." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *White v. Panic*, 783 A.2d 543, 550 n.18 (Del. 2001). A pre-litigation demand may not be excused unless a shareholder plaintiff establishes *with factual particularity* that a demand on the Board of Directors would be futile. A shareholder plaintiff thus has an "onerous" burden of presenting particularized factual allegations establishing a reasonable doubt that, as of the time the complaint was filed, the Board could have properly exercised its independent and disinterested business judgment in responding to a demand. *See infra* at 11-14.

Plaintiff fails to and cannot meet this burden. The Amended Complaint contains no particularized factual allegations creating any doubt as to the Board's capacity to exercise independent and disinterested business judgment in responding to a demand. The Board is composed and was composed at the time of the filing of this action of nine directors, eight of whom are independent, non-executive outside directors. These individuals include a former Director of the Federal Bureau of Investigation; the Retired Vice Chairman of a major public audit and accounting firm; a distinguished medical researcher and Professor at the Harvard School of Public Health and Harvard Medical School; the Senior Vice Chancellor for Academic Affairs at Duke University Medical Center; a Professor in the Molecular and Cell Biology Department at Harvard University; the President and CEO of a major international automobile manufacturer; the CEO of a major U.S. industrial and defense company and the former CEO of another leading U.S.

2

corporation. There is and can be no allegation that any of these individuals had any personal stake in the matters that are the subject of this action.

The Amended Complaint attempts to allege futility on two grounds, both of which fail as a matter of law. Plaintiff first makes the wholly conclusory and baseless allegation that the Director Defendants "knowingly approved" or "participated in, approved and/or permitted" the misconduct alleged in the Amended Complaint. Am. Complaint ¶¶ 144, 151. Plaintiff offers no particularized factual allegations to support these baseless assertions. These types of unsupported and conclusory allegations consistently have been rejected as the basis for excusing a prelitigation demand. *See infra* at 14-18.

Plaintiff next contends that the Director Defendants failed to "manage and oversee" the Company's operations and to "stop the Company's management" from engaging in wrongdoing, and therefore face a risk of liability. Am. Complaint ¶¶ 145-149. A claim that corporate directors are liable for the failure to exercise oversight "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment" and requires proof of bad faith conduct not alleged here. *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996); *see Ferre v. McGrath*, No. 06-CV-1684 (CM), 2007 WL 1180650 at *8-*9 (S.D.N.Y. Feb. 16, 2007) (refusing to excuse pre-litigation requirement based on similar allegations). Courts consistently have rejected similar attempts to excuse demand based on such allegations. *See infra* at 18-22.

In particular, the purported "red flags" that plaintiff contends should have alerted the Board to the alleged wrongdoing—the FTC's non-approval of the initial settlement

submitted for its review and earlier regulatory challenges faced by the Company in

unrelated matters, Am. Complaint ¶¶ 147-149—are nothing of the kind.  There is

absolutely no factual or logical basis for a conclusion that the Board "consciously and

knowingly" ignored "red flags," Am. Complaint ¶ 146, or otherwise acted in bad faith

with respect to the Plavix settlement; indeed, such a conclusion is inconsistent with

plaintiff's own allegations.  As plaintiff acknowledges, by its terms the Plavix settlement

was expressly subject to review by and approval of the FTC.  Am. Complaint ¶ 85.  To

the extent there was anything unlawful or improper with the terms of the settlement, the

FTC could be expected simply to exercise its discretion not to grant approval.  In addition

to the safeguards provided by FTC review, as the Amended Complaint also

acknowledges, experienced outside counsel provided advice, assistance and directly

participated in the settlement process, and the Company had the added benefit of a

federal monitor overseeing its compliance efforts.  *Id.* ¶¶ 88, 107, 122.  Accordingly, far

from any "red flags," there were layers of protections and "green lights" indicating that

the settlement process would proceed appropriately.  *See infra* at 20-22.

The FTC's decision not to approve the initial agreement submitted for its review

cannot possibly serve as a "red flag" where, as the Amended Complaint acknowledges,

the FTC simultaneously invited BMS to submit a revised agreement.  *Id.* ¶ 89.  Similarly,

plaintiff's attempt to dredge up previous regulatory issues having nothing to do with the

Plavix settlement (all of which occurred years earlier and before the appointment of a

federal monitor to oversee compliance efforts) cannot properly serve as the basis to

excuse a pre-litigation demand.  *See Halpert Enters., Inc. v. Harrison*, No. 02-CV-9501

4

(SHS), 2005 WL 1773686, at *2 (S.D.N.Y. Jul. 26, 2005) (attempt to rely on a "gallimaufry" of "other corporate scandals" to excuse demand rejected where plaintiff failed to "proffer[] more than conclusory allegations that the directors should have known about alleged wrongdoing" asserted in the complaint); *infra* at 21-22.

There is no proper basis to doubt that the Board is capable of exercising its independent, disinterested business judgment in responding to a demand. The Amended Complaint should therefore be dismissed based on plaintiff's failure to satisfy the demand requirement.

## FACTUAL BACKGROUND[1]

### I.    BMS and its Board of Directors.

BMS is a Delaware corporation with its principal place of business located at 345 Park Avenue, New York, New York. Am. Complaint ¶ 24. BMS, through its divisions and subsidiaries, is engaged in the discovery, development, licensing, manufacturing, marketing, distribution and sale of pharmaceutical and other health care related products. *Id.*

The members of the BMS Board of Directors currently are, and at the time the Amended Complaint was filed on October 15, 2007, were:

- Lewis B. Campbell, Chairman, President and Chief Executive Officer of Textron, Inc. Director since 1998.

---

[1]    The well-pleaded allegations in the Amended Complaint are taken as true solely for the purposes of this motion. *Sec. Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 68 (2d Cir. 2000).

- James M. Cornelius, named as Chief Executive Officer of BMS in April 2007 after serving as interim CEO starting September 12, 2006.  Formerly Chairman and Senior Executive of Guidant Corporation and Director and Chief Financial Officer of Eli Lilly and Company.  Director since 2005.

- Louis J. Freeh, formerly Vice Chairman, General Counsel and Corporate Secretary of MBNA Corporation; former FBI Director and United States District Judge.  Director since 2005.

- Laurie H. Glimcher, M.D., Irene Heinz Given Professor of Immunology at the Harvard School of Public Health and Professor of Medicine at Harvard Medical School.  Director since 1997.

- Michael Grobstein, Retired Vice Chairman of Ernst & Young LLP. Director since 2007.

- Leif Johansson, President of AB Volvo and Chief Executive Officer of The Volvo Group.  Director since 1998.

- James D. Robinson III, Chairman of the Board of BMS; Co-Founder and General Partner of RRE Ventures and former Chairman and Chief Executive Officer of American Express Company.  Director since 1976.

- Vicki L. Sato, Ph.D., Professor of Management Practice at Harvard Business School and Professor of the Practice in the Department of Molecular and Cell Biology at Harvard University.  Director since 2006.

- R. Sanders Williams, M.D., Senior Vice Chancellor for Academic Affairs at Duke University Medical Center and Dean of Duke University School of Medicine.  Director since 2006.

Am. Complaint ¶¶ 26, 28, 30, 32, 34, 36, 38, 40, 42; *see also* Reisner Decl. Ex. A (BMS

14A Proxy Statement filed March 22, 2007 at 10-12).[2]

---

[2]     "In deciding a motion to dismiss, the court may consider . . . public disclosure documents that are required by law to be, and have been, filed with the SEC." *Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 237 (S.D.N.Y. 2006) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991)).  The Court may also consider any documents incorporated in the complaint by reference.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

6

II.     **Plaintiff's Allegations**.

The Amended Complaint alleges that the Director Defendants breached fiduciary duties in connection with attempts by the Company to settle patent litigation involving the prescription pharmaceutical product Plavix. Am. Complaint ¶ 2. Plavix is a widely-prescribed platelet aggregation inhibitor used to protect against heart attacks and strokes. *Id*. ¶ 68. It is marketed by BMS together with its co-venturer Sanofi-Aventis S.A. ("Sanofi"). *Id.* ¶¶ 49, 68. Plavix is the top-selling pharmaceutical product sold by BMS. *Id.* ¶ 3.

In November 2001, Apotex Inc. ("Apotex"), a Canadian company, filed an Abbreviated New Drug Application ("ANDA") with the U.S. Food and Drug Administration ("FDA") seeking approval to manufacture and sell a generic form of Plavix (clopidogrel bisulfate). *Id*. ¶¶ 50, 70. BMS and Sanofi subsequently filed a lawsuit against Apotex in March 2002 claiming infringement of the Plavix patent. *Id*. ¶ 71.

In January 2006, Apotex received FDA approval to market its generic version of Plavix. *Id.* ¶ 74. At or around the same time, BMS began discussions with Apotex regarding possible settlement of the Plavix litigation. *Id.* ¶¶ 77, 78. On March 17, 2006, BMS entered into a proposed settlement agreement with Apotex in an attempt to resolve the litigation. *Id*. ¶ 80. In accordance with a pre-existing consent order with the FTC, the settlement agreement was expressly subject to FTC regulatory review and approval. *Id*. ¶ 84. BMS publicly announced that the proposed settlement had been entered in a press release and Form 8-K issued on March 21, 2006. *Id.* ¶ 81; Reisner Decl. Ex. B (copy of

7

Form 8-K).  The announcement described key terms of the proposed settlement, including that BMS would grant Apotex an exclusive license to sell its generic product effective September 17, 2011 and that the agreement involved payments to Apotex that would be made equally by BMS and Sanofi.  *Id.*  The announcement cautioned that the settlement agreement was subject to regulatory approval by the FTC and state attorneys general and that there was a "significant risk that required antitrust clearance will not be obtained."  Reisner Decl. Ex. B (copy of Form 8-K).  It further cautioned that if antitrust clearance were not obtained, the litigation would be reinstated, Apotex could launch its generic product at risk and that such a launch "would be material to the Company's sales of Plavix and results of operations and cash flows, and could be material to its financial condition and liquidity."  *Id.*

On April 4, 2006, the FTC met with outside counsel for BMS regarding the settlement agreement, and objected to certain provisions, including a provision that prohibited BMS from launching an authorized generic version of Plavix during Apotex's period of exclusivity under the license.  *Id*. ¶ 88.  On or about May 5, 2006, the FTC advised the Company that it was prepared to disapprove the proposed settlement agreement.  *Id.* ¶ 89.  The FTC nevertheless stated that it was receptive to reviewing a revised agreement that might be submitted by the parties.  *Id.*

Representatives of BMS and Apotex thereafter attempted to negotiate a revised agreement.  *Id*. ¶ 92.  On May 12, 2006 and May 24, 2006, Dr. Andrew Bodnar, then Senior Vice President of Strategy and Medical & External Affairs for BMS, met with representatives of Apotex in Toronto.  *Id.* ¶¶ 92-95.  The Amended Complaint alleges

8

that at the May 12 meeting, Dr. Bodnar made oral representations to Apotex resulting in an understanding that BMS would not launch an authorized generic during Apotex's license period if the parties reached a revised settlement agreement. *Id.* ¶¶ 99, 100. The parties subsequently entered into a revised agreement that was submitted to the FTC for review and approval on May 30, 2006. *Id.* ¶ 103. According to the Amended Complaint, the revised agreement did not reference Dr. Bodnar's alleged oral representations to Apotex. *Id.* The Amended Complaint also alleges that Dr. Bodnar and outside counsel signed and submitted a certification to the FTC on June 12, 2006, stating that the Company had not made any representation, promise or commitment that was not contained in the agreement submitted to the FTC. *Id.* ¶¶ 106, 107.

On June 25, 2006, the Company issued an update on the status of the proposed settlement and regulatory review. *Id.* ¶ 108. On July 27, 2006, the Company announced that it had learned the previous day that the Antitrust Division of the U.S. Department of Justice (the "Antitrust Division") was conducting a criminal investigation regarding the proposed settlement of the Apotex litigation. *Id.* ¶ 110. The next day, the Company reported that the settlement agreement had failed to receive the required regulatory clearance. *Id.* ¶ 112.

On August 8, 2006, Apotex launched its generic product, and quickly began to capture a substantial share of the market. *Id.* ¶ 115. On August 31, 2006, BMS obtained a preliminary injunction prohibiting the continuing sale of Apotex's generic product. *Sanofi-Synthelabo v. Apotex, Inc.*, 488 F. Supp. 2d 317 (S.D.N.Y. 2006). BMS subsequently prevailed at trial upon a finding that the Plavix patent was valid and had

been infringed by Apotex.  *Sanofi-Synthelabo v. Apotex, Inc.*, 492 F. Supp. 2d 353 (S.D.N.Y. 2007).

On September 12, 2006, the Company publicly announced that its Chief Executive Officer, Peter Dolan, and its General Counsel, Richard Willard, would be leaving their positions, both effective immediately.  Am. Complaint ¶ 122.  The Company's announcement explained that the Board had "received reports from the company's outside counsel on issues relating to the PLAVIX® patent litigation" that were "prepared and delivered at the request of the Board as part of its ongoing assessment of this matter."  *Id.*  The announcement further explained that during its deliberations, the Board also heard from former Federal Judge Frederick B. Lacey, a federally-appointed Monitor at the Company since 2005, who had conducted his own inquiry.  *Id.*  Judge Lacey recommended that the employment of both Mr. Dolan and Mr. Willard be terminated.  *Id.*

On May 10, 2007, BMS announced that it had reached an agreement in principle with the Antitrust Division to resolve its investigation of the Company.  *Id.* ¶ 123.  Under the agreement, the Company agreed to plead guilty to two counts of violating 18 U.S.C. § 1001 and to pay a fine of $1 million.  *Id.*  The charges related to "representations made by a former Bristol-Myers Squibb senior executive during the renegotiation of the proposed [Plavix] settlement agreement in May 2006 that were not disclosed to the U.S. Federal Trade Commission."  *Id.* ¶ 124.  The plea agreement was signed on May 31, 2007, *id.* ¶ 126, and on June 11, 2007, the Company entered a guilty plea.  *Id.* ¶ 127.

This action initially was filed on July 31, 2007 and the Amended Complaint was filed on October 15, 2007.  The Amended Complaint contains five counts:  (1) breach of fiduciary duty for allegedly "failing to discover" violations of law and to oversee BMS operations, Am. Complaint ¶¶ 167-172; (2) contribution and indemnification, *id*. ¶¶ 173-77; (3) breach of an alleged duty to "ensure that the Company was operated in a diligent, honest and prudent manner;" *id*. ¶¶ 178-181; (4) an alleged failure to issue timely and accurate disclosure, *id*. ¶¶ 182-190; and (5) an alleged failure to establish adequate internal controls, *id.* ¶¶ 191-194.

The Amended Complaint asserts that the pre-litigation demand requirement is excused based on the unsupported and conclusory allegation that the Director Defendants "knowingly approved" or "participated" in the misconduct, *id.* ¶ 144, 150, 151, and/or because the Director Defendants allegedly failed to manage and oversee the Company's operations.  *Id.* ¶¶ 145-149.  As demonstrated below, these allegations are insufficient to excuse the demand requirement.

## <u>ARGUMENT</u>

**I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF <u>FAILED TO SATISFY THE DEMAND REQUIREMENT.</u>**

### A.    Delaware Law Governs the Applicable Demand Requirements.

The demand requirements for a derivative suit are determined by the law of the state in which the company is incorporated.  *RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330 (2d Cir. 1991); *Kamen v. Kemper Fin. Servs. Inc.,* 500 U.S. 90, 96-97 (1991).  BMS is a Delaware Corporation.  Am. Complaint ¶ 24.  Delaware law therefore governs.

11

*See, e.g., Ferre v. McGrath*, No. 06-CV-1684 (CM), 2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007) (applying Delaware law to find that demand not excused); *In re Pfizer Inc. Derivative Sec. Litig.*, 503 F. Supp. 2d 680, 685 (S.D.N.Y. 2007) (same); *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426, 429-30 (S.D.N.Y. 2005) (same); *Loveman v. Lauder*, 484 F. Supp. 2d 259, 265 (S.D.N.Y. 2005) (same).

Under Delaware law, the decision to bring a lawsuit on behalf of a corporation belongs to its Board of Directors. *See* Del. Code Ann. Tit. 8 § 141(a); *Levine v. Smith*, 591 A.2d 194, 200 (Del. 1991), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *Aronson*, 473 A.2d at 811; *Grimes v. Donald*, 673 A.2d 1207, 1215 (Del. 1996), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Shareholder plaintiffs "must overcome the powerful presumptions of the business judgment rule before they will be permitted to pursue a derivative claim." *Loveman*, 484 F. Supp. 2d at 265 (citation omitted). As a condition precedent to a shareholder derivative action, the shareholder must either:  (i) make a pre-litigation demand upon the board to commence an action on behalf of the company; or (ii) establish that demand would be "futile" because a majority of the board is incapable of making a disinterested and independent judgment whether litigation should be pursued. *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993), *abrogated on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *see also Loveman*, 484 F. Supp. 2d at 264-65. The pre-suit demand requirement flows from "the fundamental precept" of Delaware corporate law that "directors manage the business and affairs of corporations." *Aronson*, 473 A.2d at 812; *White v. Panic*, 783 A.2d 543, 550 n.18 (Del. 2001). The requirement is a "rule of

12

substantive right – not simply a rule of technical pleading." *Kaufman v. Belmont*, 479 A.2d 282, 286 (Del. Ch. 1984).[3]

Delaware law imposes an "onerous" burden on plaintiffs who seek to avoid the pre-suit demand requirement on the basis of futility. *Levine*, 591 A.2d at 207.  In determining whether the allegations of a derivative complaint satisfy this heightened pleading standard, only well-pleaded facts and reasonable inferences drawn from them may be considered. *Brehm*, 746 A.2d at 255.  Courts repeatedly have emphasized that "conclusory allegations are not considered as expressly pleaded facts or factual inferences." *Id.*; *Ferre v. McGrath*, 2007 WL 1180650 at *3 ("mere notice pleading will not suffice; conclusory allegations carry no weight").  "Conclusory allegations of fact or law [which are] not supported as allegations of specific fact may not be taken as true." *Loveman*, 484 F. Supp. 2d at 265 (citation omitted).

> **B.** **Only Particularized Factual Allegations Creating a Reasonable Doubt that a Majority of Directors Could Respond to a Demand With Independence and Disinterest May Excuse Plaintiff's Failure to Make a Pre-Litigation Demand.**

Plaintiff concedes that he did not make any demand on the BMS Board of Directors prior to filing this action.  Am. Complaint ¶ 142.  He instead attempts to rely on

---

[3]    Rule 23.1 of the Federal Rules of Civil Procedure, a "procedural embodiment of this substantive principle of corporation law," *Rales*, 634 A.2d at 932, requires that a shareholder derivative complaint "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ. P. 23.1.  Rule 23.1 serves to "filter unfounded claims" by requiring the plaintiff to "plead the futility of demand with specific factual allegations." *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426, 429 (S.D.N.Y. 2005).

13

an allegation of futility. *Id.* Where, as here, the plaintiff does not challenge a particular business decision made by the Board, the standard established in *Rales v. Blasband*, 634 A.2d 927 (Del. 1993), applies. *Guttman v. Huang*, 823 A.2d 492, 499 (Del. Ch. 2003); *Loveman*, 484 F. Supp. 2d at 265-266. Under that test, a demand will be excused as futile only if "the *particularized factual allegations* of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint [was] filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 934 (emphasis added).

Plaintiff has not provided any particularized factual allegations establishing a lack of independence or disinterest by a majority of the directors or any of the directors.

### C.    Plaintiff Has Failed to Allege Particularized Facts Creating a Reason to Doubt the Independence or Disinterest of the Board.

To show a lack of independence, a plaintiff must plead *with particularity* that the "directors were dominated or otherwise controlled" by an individual or entity with a financial interest in the challenged conduct. *Grobow v. Perot*, 539 A.2d 180, 189 (Del. 1988), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Plaintiff "must show that the directors are 'beholden' to [interested parties] or so under their influence that their discretion would be sterilized." *Rales*, 634 A.2d at 936.

Plaintiff does not and cannot allege that the eight outside directors on the BMS Board were dominated or controlled by the financial interests of any director or other person. *Grobow v. Perot*, 526 A.2d 914, 924 (Del. Ch. 1987) (outside directors are

14

"presumptively independent").  There is no pleaded basis for doubting the independence of the Board.

In addition to lacking any basis to question the independence of the Board, plaintiff cannot demonstrate a reasonable doubt that the Board is disinterested.  A director is deemed interested only if particularized factual allegations show "he will be materially affected, either to his benefit or his detriment" in a manner "not shared by the corporation and the stockholders."  *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) (citing *Rales*, 634 A.2d at 936); *Halpert*, 362 F. Supp. 2d at 431 (same); *Loveman*, 484 F. Supp. 2d at 268 (demand not excused where no allegation that directors "stood to receive any personal financial benefit" from challenged transactions).[4]

A plaintiff seeking to establish a lack of director disinterest based on alleged wrongdoing must demonstrate that "personal liability is not a 'mere threat' but instead may rise to a 'substantial likelihood.'"  *Rales*, 634 A.2d at 936 (quoting *Aronson*, 473 A.2d at 815); *Guttman*, 823 A.2d at 500-01 & n.15; *In re Pfizer Inc. Deriv. Sec. Litig.*, 503 F. Supp. 2d 680, 685 (S.D.N.Y. 2007) (director has an interest "that excuses demand only when the potential for liability rises to a 'substantial likelihood'") (citation omitted);

---

[4]     It is settled law that a demand upon the Board of Directors is not deemed futile merely because the directors are named as defendants.  *Lewis v. Graves*, 701 F.2d 245, 249 (2d Cir. 1983); *Grimes*, 673 A.2d at 1216 n.8; *Aronson*, 473 A.2d at 817.  Similarly, demand is not excused because the named directors served on the Board during the events alleged in the complaint.  *Rattner v. Bidzos*, C.A. No. 19700, 2003 Del. Ch. LEXIS 103, at *34 & n.53 (Del. Ch. Sept. 30, 2003) (pre-suit demand not excused by virtue of defendants' "status as directors").  Any other rule would permit plaintiffs to "circumvent" the demand requirement simply by naming a majority of directors.  *Lewis,* 701 F.2d at 249; *Grimes*, 673 A.2d 1216 n.8.

15

*In re Xenthanol Corp. Deriv. Litig.*, No. 06-CV-15536 (HB), 2007 WL 2331975, at *4 (S.D.N.Y. Aug. 16, 2007) (same).  The burden is on "a would-be derivative plaintiff" to "plead particularized facts that, if proved, would establish that a majority . . . of the directors face a 'substantial likelihood' of personal liability for the wrongdoing alleged in the complaint [and this] decision must be made on a director-by-director basis."  *Ferre v. McGrath*, 2007 WL 1180650, at *3 (citation omitted).

Plaintiff offers no such particularized facts.  Instead, plaintiff relies on undifferentiated and conclusory allegations that the Director Defendants "participated in, approved and/or permitted" the wrongful conduct alleged, Am. Complaint ¶ 151; *id.* ¶¶ 27, 29, 31, 33, 35, 37, 39, 41, 43.  Plaintiff cannot and makes no effort to link the Director Defendants factually to any of the alleged misconduct relating to the Plavix settlement.

Unsupported conclusory assertions such as those offered by plaintiff consistently have been rejected as a basis for excusing the demand requirement.  *Lewis*, 701 F.2d at 248-49 (allegations that defendants directors approved alleged wrongdoing insufficient to satisfy demand requirement); *Ferre v. McGrath*, 2007 WL 1180650, at *9 (demand not excused based on conclusory allegations) (Delaware law); *see also Rattner v. Bidzos*, 2003 Del Ch. LEXIS 103, at *34 & n.53 (same); *Loveman,* 484 F. Supp. 2d at 264 n.24 (same); *In re Forest Labs., Inc. Deriv. Litig.*, 450 F. Supp. 2d 379, 390 (S.D.N.Y. 2006) (demand not excused based on conclusory allegations that directors "participated in, approved, and or permitted the wrongs alleged") (Delaware law); *Simon v. Becherer*, 7 A.D.3d 66, 68, 72-73, 775 N.Y.S. 2d 313 (1st Dept. 2004) (demand not excused based on

16

conclusory allegations of director "acquiescence in, approving and/or directing" alleged misconduct) (Delaware law).[5]

The existence of a guilty plea or other disposition of government investigations does not excuse compliance with the exacting demand requirements under Delaware law. A derivative plaintiff still must plead particularized, non-conclusory facts concerning director involvement in the unlawful activity for demand to be excused. *See Richardson v. Graves*, C.A. No. 6617, 1983 WL 21109, at *4-*5 (Del. Ch. June 17, 1983) (demand not excused based upon conclusory allegations that defendants authorized and/or ratified unlawful conduct that resulted in plea agreement with government); *Shields v. Erickson*, 710 F. Supp. 686, 691-92 (N.D. Ill. 1989) (demand not excused based on conclusory allegations that the defendant directors participated in illegal conduct that resulted in guilty pleas by the company and imposition of fines) (Delaware law).

---

[5]    Plaintiff also neglected to avail himself of any of the pre-discovery fact-gathering tools available to assess particularized facts concerning board action, including seeking books and records pursuant to 8 Del. C. § 220. *See Ash v. McCall*, C.A. No. 17132, 2000 WL 1370341, at *15 n.56 (Del. Ch. Sept. 15, 2000). The Delaware Supreme Court repeatedly has cautioned that plaintiffs should refrain from a rush to the courthouse, and rather use the "tools at hand" to obtain sufficient information prior to bringing a derivative action. *Rales*, 634 A.2d at 934-35 n.10; *Brehm*, 746 A.2d at 249; *Guttman*, 823 A.2d at 504 (noting that the books and records made available through section 220 "could have provided the basis for the pleading of particularized facts — i.e., for the filing of a complaint that meets the legally required standard . . . [Plaintiffs] have thus ignored the repeated admonitions of the Delaware Supreme Court and [Chancery Court] for derivative plaintiffs to proceed deliberately and to use the books and records device to gather the materials necessary to prepare a solid complaint"); *Ferre v. McGrath*, 2007 WL 1180650, at *7 ("Delaware courts have made it clear that a derivative plaintiff who fails to avail himself of this device for acquiring information about what directors knew and when they knew it will not receive the benefit of the doubt").

Significantly, although the Amended Complaint refers to the guilty plea entered by BMS in connection with the Plavix matter, Am. Complaint ¶¶ 123-127, plaintiff does not and cannot allege that these charges related to any conduct or activities of the Board of Directors.  Indeed, as the Amended Complaint itself acknowledges, the charges related to "representations made by a former Bristol-Myers Squibb senior executive."  *Id.* ¶ 124. There is not and cannot be any allegation that the charges involved any accusation, allegation, or claim relating to the Board.

To the contrary, as the Amended Complaint also acknowledges, the Board took active and responsible steps to address the Plavix matter.  It requested and received reports from the Company's outside counsel.  *Id.* ¶ 122.  It considered and acted upon Judge Lacey's recommendation that the employment of both Mr. Dolan and Mr. Willard be terminated.  *Id.*  Plaintiff's own allegations are therefore inconsistent with the assertion that demand would be futile.  *See, e.g., Stone v. Ritter*, 911 A.2d 362, 372-73 (Del. 2006) (complaint undercut suggestion that Board acted irresponsibly and demand was not excused).

Failing to plead any particularized facts showing that any Board member participated in or knew of any alleged wrongdoing, plaintiff asserts that demand should be excused based on the Board's alleged "systemic failure to manage and oversee the Company's operations."  Am. Complaint ¶¶ 145-149, 153-157, 160-162.  Plaintiff thus seeks to rely on a so-called "*Caremark* claim" under Delaware corporate law.  *See generally In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del Ch. 1996).  That theory "is possibly the most difficult theory in corporation law upon which a plaintiff

18

might hope to win a judgment." *Id.* at 967.  Courts therefore consistently have rejected

similar attempts to excuse a pre-litigation demand on this basis.  *See, e.g., Ferre v.*

*McGrath*, 2007 WL 1180650, at *8-*9; *In re Pfizer Inc. Deriv. Securities Litig.*, 503 F.

Supp. 2d at 685; *Halpert Enters., Inc. v. Harrison*, No. 02-CV-9501 (SHS), 2005 WL

1773686 at *2 (S.D.N.Y. July 26, 2005); *Guttman*, 823 A.2d at 506-07.

An allegation that board members failed adequately to oversee the company's

affairs can only excuse demand where particularized facts demonstrate a lack of good

faith, such as intentionally acting "with a purpose other than that of advancing the best

interests of the corporation," with "the intent to violate applicable positive law, "or

"fail[ing] to act in the face of a known duty to act." *Stone*, 911 A.2d at 369.  The

particularized allegations must "show[] that the directors were conscious of the fact that

they were not doing their jobs." *Guttman*, 823 A.2d at 506.  "[T]he kind of fact pleading

that is critical to a *Caremark* claim" are "contentions that the company lacked an audit

committee, that the company had an audit committee that met only sporadically and

devoted patently inadequate time to its work, or . . . had clear notice of serious accounting

regularities and simply chose to ignore them or, even worse, to encourage their

continuation." *Id.* at 507.

Plaintiff has not presented any particularized allegations to meet this rigorous

standard and cannot present such facts because there is no proper basis to question the

Board's good faith.  Plaintiff's strained allegation that the Board "consciously and

knowingly" ignored "red flags" relating to the Apotex settlement, Am. Complaint ¶¶ 146-

149, is unsupportable and, in fact, contradicted by the allegations of the Amended

19

Complaint.  The purported "red flags" alleged by plaintiff are:  (1) the FTC's non-

approval of the initial Plavix settlement agreement submitted for its review, *id*. at ¶ 148,

and (2) earlier regulatory challenges faced by the Company in matters unrelated to the

Plavix settlement.  *Id*. at ¶¶ 147, 149.  Neither can possibly be seen as a clear "red flag"

warning consciously ignored by the Board.

     *First*, there is no factual or logical basis to conclude that there was wrongdoing

based on the FTC's decision not to approve the initial Plavix settlement.  As the

Amended Complaint acknowledges, the FTC itself advised the Company that it was

prepared to review a revised settlement agreement submitted by the parties.  *Id.* ¶ 89.

Moreover, any proposed settlement remained subject to FTC review and the FTC could

be expected simply to disapprove any settlement agreement that was not lawful and

appropriate.  FTC non-approval of the initial agreement therefore provides no basis for

any allegation that a majority of directors (or any director) ignored "obvious danger

signs" in bad faith or encouraged a continuation of wrongdoing.  *In re Pfizer Inc. Deriv.*

*Securities Litig.*, 503 F. Supp. 2d at 685 (demand not excused where complaint did not

establish with particularity "obvious danger signs" actually ignored by directors);

*Guttman*, 823 A.2d at 507 (complaint lacked any particularized facts demonstrating that

directors actually aware of wrongdoing or chose to "encourage" the continuation of

wrongdoing).

     *Second*, plaintiff cannot properly rely on regulatory issues having nothing to do

with the Plavix settlement to support a claim of bad faith by the Board with respect to the

Plavix agreement or as the basis for excusing a pre-litigation demand.  Precisely that

20

approach was rejected in *Halpert Enters., Inc. v. Harrison*, No. 02-CV-9501 (SHS), 2005 WL 1773686 at *2 (S.D.N.Y. July 26, 2005), in which a derivative plaintiff attempted to rely on "a gallimaufry of new misdeeds" and "several other corporate scandals," as purported "red flags" that "evince[d] the futility of demand" on the board of J.P. Morgan Chase & Co. in a case alleging failure to supervise unlawful transactions with Enron Corporation. *Id.* at *2. Demand was not excused because "the particularized facts alleged" failed to demonstrate any reasonable doubt that the directors were independent or disinterested. *Id.* Although there was no question that the company "suffered losses as a result of scandals" alleged by the plaintiff, *id.* at *3, as here, plaintiff "never proffer[ed] more than conclusory allegations that the directors should have known about [the] alleged wrongdoing" in the complaint. *Id.* at *2-*3; *see also Ferre v. McGrath*, 2007 WL 1180650, at *8 (rejecting purported "red flags" where no particularized factual allegations established director knowledge of the misconduct alleged in the complaint).

Indeed, plaintiff's own allegations demonstrate that there were layers of safeguards surrounding the Plavix settlement process and that, far from any "red flags," there were numerous "green lights" indicating matters would proceed appropriately. The Company had experienced outside counsel providing advice, assistance and directly participating in the settlement process, Am. Complaint ¶¶ 88, 107, 122; the Company had the added benefit of a highly-respected, hands-on federal monitor overseeing its compliance efforts, *id.* ¶ 122; and any agreement was subject to FTC review and

21

approval.  *Id.* ¶ 85.[6]  Plaintiff offers no particularized allegations or any basis whatsoever

to conclude that the Board consciously and deliberately ignored obvious signals of

wrongdoing relating to the Plavix settlement.  In the absence of such allegations, a pre-

litigation demand cannot be excused.  *See, e.g.*, *Guttman*, 823 A.2d at 506 (demand not

excused where no particularized facts established "the directors were conscious of the

fact that they were not doing their jobs"); *Ferre v. McGrath*, 2007 WL 1180650, at *8

(demand not excused where no particularized facts established board "misconduct in

defiance of their duties").  The Amended Complaint should therefore be dismissed.

### D.    Plaintiff's Remaining Allegations Do Not Excuse Demand.

Plaintiff's remaining allegations also do not meet the onerous standard for

establishing demand futility.  Plaintiff asserts without factual support that because the

Board allegedly participated in unlawful acts and practices, its actions cannot be afforded

the protections of the business judgment rule.  Am. Complaint ¶ 144.  This allegation is

an apparent effort to invoke the test set forth in *Aronson v. Lewis*, 473 A.2d 805, 814

---

6    The Monitor was appointed pursuant to a Deferred Prosecution Agreement ("DPA")
     entered in June 2005 and filed in the U.S. District Court for the District of New
     Jersey.  Reisner Decl. Ex. C.  (Plaintiff incorrectly alleges that the Monitor was
     appointed under the FTC Consent Order.  Am. Complaint ¶ 149.)  In addition to
     establishing the Monitor, the DPA required regular meetings between the Monitor
     and members of senior management.  DPA ¶ 13.  Under the DPA, the Board also
     agreed to appoint a Non-Executive Chairman to advance the Company's
     "commitment to . . . effective corporate governance" and compliance, DPA ¶ 8, to
     require regular meetings between the Non-Executive Chairman and members of
     senior management, *id.* ¶ 10, and to establish a range of additional compliance
     safeguards.  Reisner Decl. Ex. C.  These processes reflect a virtually unprecedented
     level of Board vigilance.  The Court may take judicial notice of the DPA.  *Rivera-
     Powell v. New York City Bd. of Elections*, 470 F.3d 458, 464 n.6 (2d Cir. 2006)
     (court may take judicial notice of court documents).

(Del. 1984), under which demand may be excused if particularized facts create a reasonable doubt that a decision of the Board was "the product of a valid exercise of business judgment." These allegations fail to excuse demand for two reasons.

*First*, the *Aronson* test does not apply. "The essential predicate for the *Aronson* test is the fact that a *decision* of the board of directors is being challenged in the derivative suit." *Rales*, 634 A.2d at 933 (emphasis in original). The Amended Complaint does not challenge any business decision of the Board and contains no allegation that the Board approved any action by resolution, unanimous unwritten consent, or even an informal vote. *Rales*, which focuses solely on director interest and independence, therefore applies. *See Guttman*, 823 A.2d at 499-500 (*Rales* test applies where plaintiffs do not challenge specific business decision by the Board of Directors).

*Second*, under either test, conclusory allegations that the Board approved unlawful conduct and therefore could not have exercised its business judgment validly do not establish demand futility. *See, e.g., Andreae v. Andreae*, C.A. No. 11905, 1992 WL 43924, at *4 (Del. Ch. Mar. 5, 1992) (alleged false statement to IRS insufficient to plead demand futility in the absence of particularized allegations that a majority of directors were involved in the wrongdoing); *Loveman*, 484 F. Supp. 2d at 264 n.24 (same).

Plaintiff also alleges that demand would be futile because the Company's directors and officers insurance policies "purport to exclude legal claims asserted directly by the Company against such persons." Am. Complaint ¶ 163. This allegation repeatedly has been rejected as a proper basis to excuse demand. *Halpert Enters.*, 362 F. Supp. 2d at 433 ("That the insurance policy indemnifying defendants would not cover

23

their liability were the corporation itself to bring suit against them is also not a

sufficiently particular basis for inferring demand futility"); *see also In re*

*IAC/InterActiveCorp Securities Litig.*, 478 F. Supp. 2d 574, 597, 606-07 (S.D.N.Y. 2007)

(same); *Fink v. Weill*, No. 02-CV-10250 (LTS), 2005 WL 2298224, at *4 (S.D.N.Y. Sept.

19, 2005) (same).

## <u>CONCLUSION</u>

For the foregoing reasons, the Amended Complaint should be dismissed.

Dated: New York, New York
November 12, 2007

DEBEVOISE & PLIMPTON LLP

By:  /s/  Lorin L. Reisner
    Lorin L. Reisner
    Michael R. Potenza
    Timothy T. Howard
    919 Third Avenue
    New York, New York 10022
    (212) 909-6000 (telephone)
    (212) 909-6836 (fax)

*Attorneys for Nominal Defendant Bristol-Myers
Squibb Company*

LATHAM & WATKINS LLP

By:  /s/  Kenneth Conboy
    Kenneth Conboy
    885 Third Avenue
    New York, New York 10022
    (212) 906-1200 (telephone)
    (212) 751-4864 (fax)

*Attorneys for Defendants James D. Robinson
III, Lewis B. Campbell, James M. Cornelius,
Laurie H. Glimcher, M.D., Vicki L. Sato, Ph.D,
Leif Johansson, Louis J. Freeh, Michael
Grobstein and R. Sanders Williams, M.D.*

24