# Exhibit C

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## FORM 10-K

### ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2004

Commission File Number 1-1136

# BRISTOL-MYERS SQUIBB COMPANY
(Exact name of registrant as specified in its charter)

| Delaware | 22-0790350 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (IRS Employer Identification No.) |

**345 Park Avenue, New York, N.Y. 10154**
(Address of principal executive offices)

Telephone: (212) 546-4000

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, $0.10 Par Value | New York Stock Exchange<br>Pacific Exchange, Inc. |
| $2 Convertible Preferred Stock, $1 Par Value | New York Stock Exchange<br>Pacific Exchange, Inc. |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒  No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or

information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Rule 12b-2 of the Act). Yes ☒ No ☐

The aggregate market value of the 1,951,041,834 shares of voting common equity held by non-affiliates of the registrant, computed by reference to the closing price as reported on the New York Stock Exchange, as of the last business day of the registrant's most recently completed second fiscal quarter (June 30, 2004) was approximately $47,800,524,933. Bristol-Myers Squibb has no non-voting common equity. At February 18, 2005, there were 1,951,786,180 shares of common stock outstanding.

BRISTOL-MYERS SQUIBB COMPANY
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)

**Note 20 PENSION AND OTHER POSTRETIREMENT BENEFIT PLANS (Continued)**

**Savings Plan**

The principal defined contribution plan is the Bristol-Myers Squibb Savings and Investment Program. The Company's contribution is based on employee contributions and the level of Company match. The Company's contributions to the plan were $53 million in 2004, $51 million in 2003 and $50 million in 2002.

**Note 21 LEGAL PROCEEDINGS AND CONTINGENCIES**

**Legal Proceedings and Contingencies**

Various lawsuits, claims, proceedings and investigations are pending against the Company and certain of its subsidiaries. In accordance with SFAS No. 5, *Accounting for Contingencies*, the Company records accruals for such contingencies when it is probable that a liability will be incurred and the amount of loss can be reasonably estimated. These matters involve antitrust, securities, patent infringement, the Employee Retirement Income Security Act of 1974, as amended (ERISA), pricing, sales and marketing practices, environmental, health and safety matters, product liability and insurance coverage. The most significant of these matters are described below. There can be no assurance that there will not be an increase in the scope of these matters or that any future lawsuits, claims, proceedings or investigations will not be material. Management continues to believe, as previously disclosed, that during the next few years, the aggregate impact, beyond current reserves, of these and other legal matters affecting the Company is reasonably likely to be material to the Company's results of operations and cash flows, and may be material to its financial condition and liquidity.

The Company's decision to obtain insurance coverage is dependent on market conditions, including cost and availability, existing at the time such decisions are made. As a result of external factors, the availability of insurance has become more restrictive while the cost has increased significantly. The Company has evaluated its risks and has determined that the cost of obtaining insurance outweighs the benefits of coverage protection against losses and as such, is self-insured for product liabilities effective July 1, 2004. The Company will continue to evaluate these risks and benefits to determine its insurance needs in the future.

**PLAVIX\* Litigation**

**United States**

The Company's U.S. territory partnership under its alliance with Sanofi is a plaintiff in three pending patent infringement lawsuits instituted in the U.S. District Court for the Southern District of New York entitled Sanofi-Synthelabo, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Apotex Inc. and Apotex Corp., 02-CV-2255 (SHS); Sanofi-Synthelabo, Sanofi-Synthelabo Inc. and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Dr. Reddy's Laboratories, LTD, and Dr. Reddy's Laboratories, Inc., 02-CV-3672 (SHS); and Sanofi-Synthelabo, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership vs. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceuticals Industries, Ltd., 04-CV-7458. Teva Pharmaceuticals Industries, Ltd. has since been dismissed from the case. Proceedings involving PLAVIX\* also have been instituted outside the United States. The most significant of these proceedings is pending in Canada and is described below.

The U.S. suits were filed on March 21, 2002, May 14, 2002, and September 23, 2004 respectively, and were based on U.S. Patent No. 4,847,265, a composition of matter patent, which discloses and claims, among other things, the hydrogen sulfate salt of clopidogrel, which is marketed as PLAVIX\*. The first two suits were also based on U.S. Patent No. 5,576,328, which discloses and claims, among other things, the use of clopidogrel to prevent a secondary ischemic event. The plaintiffs later withdrew Patent No. 5,576,328 from the two lawsuits. Plaintiffs' infringement position is based on defendants' filing of their Abbreviated New Drug Applications (ANDA) with the FDA, seeking approval to sell generic clopidogrel bisulfate prior to the expiration of the composition of matter patent in 2011. The defendants responded by alleging that the patent is invalid and/or unenforceable. Apotex has added antitrust counterclaims. The first two cases were consolidated for discovery. Fact discovery closed on October

15, 2003 and expert discovery was completed in November 2004; the trial could occur as early as the second quarter of 2005, although it may occur later. Discovery has not yet commenced in the third action.

The Company's U.S. territory partnership under its alliance with Sanofi is a plaintiff in another pending patent infringement lawsuit instituted in the U.S. District Court for the District of New Jersey entitled Sanofi-Synthelabo, Sanofi-Synthelabo Inc. and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc. 2:04-CV-4926. The suit was filed October 7, 2004 and was based on U.S. patent 6,429,210, which discloses and claims a particular crystalline or polymorph form of the hydrogen sulfate salt of clopidogrel, which is marketed as PLAVIX*. The case is in early stages and discovery has not yet begun.

106

1.    **Table of Contents**

**BRISTOL-MYERS SQUIBB COMPANY**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)**

**Note 21 LEGAL PROCEEDINGS AND CONTINGENCIES (Continued)**

PLAVIX* is currently the Company's largest product ranked by net sales. Net sales of PLAVIX* were approximately $3.3 billion and $2.5 billion for the years ended December 31, 2004 and 2003, respectively.

Currently, the Company expects PLAVIX* to have market exclusivity in the United States until 2011. If the composition of matter patent for PLAVIX* is found not infringed, invalid and/or unenforceable at the district court level, the FDA could then approve the defendants' ANDAs to sell generic clopidogrel, and generic competition for PLAVIX* could begin before the Company has exhausted its appeals. Such generic competition would likely result in substantial decreases in the sales of PLAVIX* in the United States.

Although the plaintiffs intend to vigorously pursue enforcement of their patent rights in PLAVIX*, it is not possible at this time reasonably to assess the outcome of these lawsuits, or, if the Company were not to prevail in these lawsuits, the timing of potential generic competition for PLAVIX*. However, if generic competition in the U.S. were to occur, the Company believes it is very unlikely to occur before the second half of 2005. It also is not possible reasonably to estimate the impact of these lawsuits on the Company.

However, loss of market exclusivity of PLAVIX* and the subsequent development of generic competition would be material to the Company's sales of PLAVIX* and results of operations and cash flows and could be material to its financial condition and liquidity.

**Canada**

Sanofi-Synthelabo and Sanofi-Synthelabo Canada Inc. have instituted a prohibition action in the Federal Court of Canada against Apotex Inc. (Apotex) and the Minister of Health in response to a Notice of Allegation from Apotex directed against Canadian Patent 1,336,777 covering clopidogrel bisulfate. Apotex's Notice of Allegation (NOA) indicated that it had filed an Abbreviated New Drug Submission (ANDS) for clopidogrel bisulfate tablets and that it sought approval (a Notice of Compliance) of that ANDS before the expiration of Canadian Patent 1,336,777, which expires August 12, 2012. Apotex's NOA further alleged that the '777 patent was invalid or not infringed. A hearing was held from February 21 to February 25, 2005 and a decision is expected before April 28, 2005, the date the statutory 24 month stay imposed on the approval of Apotex's ANDS expires.

If the decision is favorable to Apotex, it could result in a generic product on the market in Canada in the second quarter of 2005. The Company believes that any outcome in Canada should not be predictive of the outcome in the U.S. in light of the different procedural and substantive rules in the two jurisdictions.

Sanofi-Aventis and Sanofi-Synthelabo Canada Inc. have also instituted a prohibition action in the Federal Court of Canada against Novopharm Limited (Novopharm) and the Minister of Health in response to a Notice of Allegation from Novopharm directed against Canadian Patent 1,336,777 covering clopidogrel bisulfate.

The Company, together with a number of other pharmaceutical manufacturers, also has received subpoenas and other document requests from various government agencies seeking records relating to its pricing, sales and marketing practices, and "Best Price" reporting for drugs covered by Medicare and/or Medicaid. The requests for records have come from the U.S. Attorneys' Offices for the District of Massachusetts, the Eastern District of Pennsylvania, and the Northern District of Texas, the Civil Division of the Department of Justice, the Offices of the Inspector General of the Department of Health and Human Services and the Office of Personnel Management (each in conjunction with the Civil Division of the Department of Justice), and several states. In addition, requests for information have come from the House Committee on Energy & Commerce and the Senate Finance Committee in connection with investigations that the committees are currently conducting into Medicaid Best Price issues.

As previously disclosed, in mid-2003, the Company initiated an internal review of certain of its sales and marketing practices, focusing on whether these practices comply with applicable anti-kickback laws and analyzing these practices with respect to compliance with (1) Best Price reporting and rebate requirements under the Medicaid program and certain other U.S. governmental programs, which reference the Medicaid rebate program and (2) applicable FDA requirements. The Company has met with representatives of the U.S. Attorney's Office for the District of Massachusetts to discuss the review and has received related subpoenas from that U.S. Attorney's Office. The Company's internal review is expected to continue until resolution of pending governmental investigations of related matters.

The Company is producing documents and actively cooperating in the investigations, which could result in the assertion of civil and/or criminal claims. In the second quarter of 2004, the Company increased reserves for liabilities in relation to pharmaceutical pricing and sales and marketing practices described in this section by $34 million, bringing the total reserves for liabilities for these matters to $134 million. It is not possible at this time to reasonably assess the final outcome of these matters. In accordance with GAAP, the Company has determined that the above amount represents minimum expected probable losses with respect to these matters, which losses could include the imposition of fines, penalties, administrative remedies and/or liability for additional rebate amounts. Eventual losses related to these matters may exceed these reserves, and the further impact could be material. The Company does not believe that the top-end of the range for these losses can be estimated. If the Company were not to prevail in final, non-appealable determinations of these litigations and investigations, the impact could be material.

As previously disclosed, in 2004 the Company undertook an analysis of its methods and processes for calculating prices for reporting under governmental rebate and pricing programs related to its U.S. Pharmaceuticals business. The analysis was completed in early 2005. Based on the analysis, the Company identified the need for revisions to the methodology and processes used for calculating reported pricing and related rebate amounts and expects to implement these revised methodologies and processes beginning with its reporting to the Federal government agency with primary responsibility for these rebate and price reporting obligations, the Centers for Medicare and Medicaid Services (CMS) in the first quarter of 2005. In addition, using the revised methodologies and processes, the Company also has recalculated the "Best Price and "Average Manufacturer's Price" required to be reported under the Company's federal Medicaid rebate agreement and certain state agreements, and the corresponding revised rebate liability amounts under those programs for the three-year period 2002 to 2004. In the third quarter of 2004, based on the results of the Company's analysis at that time, the Company recorded an additional liability equal to the then estimated additional rebate liability resulting from the proposed revisions, which was not material. Upon completion of the analysis in early 2005, the Company has finally determined that the estimated rebate liability for those programs for the three-year period 2002 to 2004 was actually less than the rebates that had been paid by the Company for such period. Accordingly, in the fourth quarter of 2004, the Company reversed the additional rebate liability that was recorded in the third quarter of 2003 and recorded an additional reduction to the rebate liability in the amount of the estimated overpayment. The Company's proposed revisions and its updated estimate will be submitted for review to CMS. The Company anticipates that the submission to CMS also will likely be reviewed by the Department of Justice (DOJ) in conjunction with the previously disclosed subpoena received by the Company from the DOJ relating to, among other things, "Best Price" reporting for drugs covered by Medicaid as discussed in more detail above. These agencies may take the position that

**BRISTOL-MYERS SQUIBB COMPANY**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS (Continued)**

**Note 21 LEGAL PROCEEDINGS AND CONTINGENCIES (Continued)**

further revisions to the company's methodologies and calculations are required. Upon completion of governmental review, the Company will determine whether any further recalculation of the liability from the Company under the identified programs for any period or under any other similar programs is necessary or appropriate. The company believes, based on current information, that any such recalculation is not likely to result in material rebate liability. However, due to the uncertainty surrounding the recoverability of the Company's estimated overpayment arising from the review process described above, the Company has also recorded a reserve in an amount equal to the estimated overpayment. The Company has remediated its internal controls over the processes and procedures the Company believes resulted in these proposed revisions and will continue to strengthen its internal controls.

## SIGNATURES

Pursuant to the requirements of Section 13 or 15 (d) of the Securities Exchange Act of 1934, the Registrant has duly caused this Report to be signed on its behalf by the undersigned, thereunto duly authorized.

BRISTOL-MYERS SQUIBB COMPANY
(Registrant)

By  /s/  PETER R. DOLAN
**Peter R. Dolan**
*Chairman of the Board of Directors and Chief Executive Officer*

Date: March 3, 2005

Pursuant to the requirements of the Securities Exchange Act of 1934, this Report has been signed below by the following persons on behalf of the Registrant and in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /s/ PETER R. DOLAN <br> (Peter R. Dolan) | Chairman of the Board of Directors and Chief Executive Officer (Principal Executive Officer) | March 3, 2005 |
| /s/ ANDREW R.J. BONFIELD <br> (Andrew R.J. Bonfield) | Senior Vice President and Chief Financial Officer (Principal Financial Officer) | March 3, 2005 |
| /s/ DAVID L. ZABOR <br> (David L. Zabor) | Vice President and Controller (Principal Accounting Officer) | March 3, 2005 |
| /s/ ROBERT E. ALLEN <br> (Robert E. Allen) | Director | March 3, 2005 |
| /s/ LEWIS B. CAMPBELL <br> (Lewis B. Campbell) | Director | March 3, 2005 |
| /s/ VANCE D. COFFMAN <br> (Vance D. Coffman) | Director | March 3, 2005 |
| /s/ JAMES M. CORNELIUS <br> (James M. Cornelius) | Director | March 3, 2005 |
| /s/ ELLEN V. FUTTER <br> (Ellen V. Futter) | Director | March 3, 2005 |

| | | |
|---|---|---|
| /s/ LOUIS V. GERSTNER, JR. <br> (Louis V. Gerstner, Jr.) | Director | March 3, 2005 |
| /s/ LAURIE H. GLIMCHER, M.D. <br> (Laurie H. Glimcher, M.D.) | Director | March 3, 2005 |
| /s/ LEIF JOHANSSON <br> (Leif Johansson) | Director | March 3, 2005 |
| /s/ JAMES D. ROBINSON III <br> (James D. Robinson III) | Director | March 3, 2005 |
| /s/ LOUIS W. SULLIVAN, M.D. <br> (Louis W. Sullivan, M.D.) | Director | March 3, 2005 |