# Exhibit D

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## FORM 10-K

ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE
SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2005

Commission File Number 1-1136

# BRISTOL-MYERS SQUIBB COMPANY
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **22-0790350** |
| (State or other jurisdiction of incorporation or organization) | (IRS Employer Identification No.) |

**345 Park Avenue, New York, N.Y. 10154**
(Address of principal executive offices)
Telephone: (212) 546-4000

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, $0.10 Par Value | New York Stock Exchange<br>Pacific Exchange, Inc. |
| $2 Convertible Preferred Stock, $1 Par Value | New York Stock Exchange<br>Pacific Exchange, Inc. |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☒   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☒    Accelerated filer ☐    Non-accelerated filer ☐

Indicate by check mark if the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No ☒

The aggregate market value of the 1,958,265,784 shares of voting common equity held by non-affiliates of the registrant, computed by reference to the closing price as reported on the New York Stock Exchange, as of the last business day of the registrant's most recently completed second fiscal quarter (June 30, 2005) was approximately $48,917,479,284. Bristol-Myers Squibb has no non-voting common equity. At February 14, 2006, there were 1,959,073,035 shares of common stock outstanding.

DOCUMENTS INCORPORATED BY REFERENCE: Portions of the Proxy Statement for the registrant's Annual Meeting of Stockholders to be held May 2, 2006 are incorporated by reference into Part III of this Annual Report on Form 10-K.

**Note 20 LEGAL PROCEEDINGS AND CONTINGENCIES**

Various lawsuits, claims, proceedings and investigations are pending against the Company and certain of its subsidiaries. In accordance with SFAS No. 5, *Accounting for Contingencies*, the Company records accruals for such contingencies when it is probable that a liability will be incurred and the amount of loss can be reasonably estimated. These matters involve antitrust, securities, patent infringement, pricing, sales and marketing practices, environmental, health and safety matters, product liability and insurance coverage. The most significant of these matters are described below. There can be no assurance that there will not be an increase in the scope of these matters or that any future lawsuits, claims, proceedings or investigations will not be material. Management continues to believe, as previously disclosed, that during the next few years, the aggregate impact, beyond current reserves, of these and other legal matters affecting the Company is reasonably likely to be material to the Company's results of operations and cash flows, and may be material to its financial condition and liquidity.

The Company's decision to obtain insurance coverage is dependent on market conditions, including cost and availability, existing at the time such decisions are made. As a result of external factors, the availability of insurance has become more restrictive while the cost has increased significantly. The Company has evaluated its risks and has determined that the cost of obtaining insurance outweighs the benefits of coverage protection against losses and as such, became self-insured for product liabilities effective July 1, 2004. The Company will continue to evaluate these risks and benefits to determine its insurance needs in the future.

**INTELLECTUAL PROPERTY**

**PLAVIX\* Litigation**

PLAVIX\* is currently the Company's largest product ranked by net sales. Net sales of PLAVIX\* were approximately $3.8 billion for the year ended December 31, 2005. The PLAVIX\* patents are subject to a number of challenges in the United States and Canada as described below.

Currently, the Company expects PLAVIX\* to have market exclusivity in the United States until 2011. Apotex announced that on January 2006 it had received final approval of its aNDA for clopidogrel bisulfate from the FDA. Accordingly, Apotex could decide to launch a generic product at risk at any time. Such generic competition would likely result in substantial decreases in the sales of PLAVIX\* in the United States. The Company expects that the final approval of the aNDAs of the other defendants will be subject to any potential 180-day semi-exclusivity of Apotex.

**United States**

The Company's U.S. territory partnership under its alliance with Sanofi is a plaintiff in four pending patent infringement lawsuits instituted in the U.S. District Court for the Southern District of New York entitled Sanofi-Synthelabo, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Apotex Inc. and Apotex Corp. (Apotex), 02-CV-2255 (SHS); Sanofi-Synthelabo, Sanofi-Synthelabo Inc. and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Dr. Reddy's Laboratories, LTD, and Dr. Reddy's Laboratories, Inc., 02-CV-3672 (SHS); Sanofi-Synthelabo, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceuticals Industries, Ltd., 04-CV-7458 and Sanofi-Aventis, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Cobalt Pharmaceuticals Inc., 05-CV-8055 (SHS). Teva Pharmaceuticals Industries, Ltd. has since been dismissed from the case. Proceedings involving PLAVIX\* are also in progress in Canada.

The U.S. suits were filed on March 21, 2002, May 14, 2002, September 23, 2004 and September 16, 2005, respectively, and were based on U.S. Patent No. 4,847,265, a composition of matter patent, which discloses and claims, among other things, the hydrogen sulfate salt of clopidogrel, which is marketed as PLAVIX\*. The first two suits were also based on U.S. Patent No. 5,576,328, which discloses and claims, among other things, the use of clopidogrel to prevent a secondary ischemic event. The plaintiffs later withdrew Patent No. 5,576,328 from the two lawsuits. Plaintiffs' infringement position is based on defendants' filing of their Abbreviated New Drug Applications (aNDA) with the FDA, seeking approval to sell generic clopidogrel bisulfate prior to the expiration of the composition of matter patent in 2011. The defendants responded by alleging that the patent is invalid and/or unenforceable. Apotex has added antitrust counterclaims. The first two cases were consolidated for discovery. Fact

discovery closed on October 15, 2003 and expert discovery was completed in November 2004. The joint pretrial order in the Apotex case was submitted May 27, 2005, and the court approved it.

The court has scheduled trial in the Apotex matter to begin in June 2006. The Apotex case will be tried without a jury. Plaintiffs filed a motion to consolidate the Dr. Reddy's case with the Apotex case for trial. That motion is pending before the court. In a stipulation approved by the U.S. District Court for the Southern District of New York on April 15, 2005, all parties to the patent infringement litigation against Teva have agreed that the Teva litigation will be stayed, pending resolution of the Apotex and Dr.

111

### Note 20 LEGAL PROCEEDINGS AND CONTINGENCIES (Continued)

Reddy's litigation, and that the parties to the Teva litigation will be bound by the outcome of the litigation in the District Court against Apotex or Dr. Reddy's. On April 18, 2005, the Court denied as moot the pending motion to consolidate the Teva litigation with the litigation against Apotex and Dr. Reddy's, as a result of the Court's approval of the stipulation. The parties submitted a similar stipulation to the court in the Cobalt case on October 12, 2005, and the Court approved it. Thus the case against Cobalt is also stayed.

On April 20, 2005, Apotex filed a complaint for declaratory judgment against Sanofi-Aventis, Sanofi-Aventis, Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership. The complaint seeks a declaratory judgment that the '265 patent is unenforceable due to alleged inequitable conduct committed during the prosecution of the patent. The defendants responded by submitting a motion to dismiss, which the court granted on September 12, 2005. Apotex has filed an appeal to the United States Court of Appeals for the Federal Circuit.

The Company's U.S. territory partnership under its alliance with Sanofi is a plaintiff in another pending patent infringement lawsuit instituted in the U.S. District Court for the District of New Jersey entitled Sanofi-Synthelabo, Sanofi-Synthelabo Inc. and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc. 2:04-CV-4926. The suit was filed October 7, 2004 and was based on U.S. patent 6,429,210, which discloses and claims a particular crystalline or polymorph form of the hydrogen sulfate salt of clopidogrel, which is marketed as PLAVIX*. The case is in the discovery phase. On December 8, 2005, the court permitted Watson to pursue its declaratory judgment counterclaim with respect to U.S. Patent No. 6,504,030. On January 24, 2006, the Court approved the parties' stipulation to stay this case pending the outcome of the trial in the Apotex matter. Thus this case is officially stayed.

**Canada**

Sanofi-Synthelabo and Sanofi-Synthelabo Canada Inc. instituted a prohibition action in the Federal Court of Canada against Apotex Inc. (Apotex) and the Minister of Health in response to a Notice of Allegation (NOA) from Apotex directed against Canadian Patent 1,336,777 covering clopidogrel bisulfate. Apotex's Notice of Allegation indicated that it had filed an Abbreviated New Drug Submission (ANDS) for clopidogrel bisulfate tablets and that it sought approval (a Notice of Compliance) of that ANDS before the expiration of Canadian Patent 1,336,777, which expires August 12, 2012. Apotex's NOA further alleged that the '777 patent was invalid or not infringed. A hearing was held from February 21 to February 25, 2005. On March 21, 2005, the Canadian Federal Court of Ottawa rejected Apotex's challenge to the Canadian PLAVIX* patent and held that the asserted claims are novel, not obvious and infringed, and granted Sanofi's application for an order of prohibition against the Minister of Health and Apotex Inc. That order of prohibition will preclude approval of Apotex's ANDS until the patent expires in 2012, unless the Federal Court's decision is reversed on appeal. Apotex has filed an appeal.

Sanofi-Synthelabo and Sanofi-Synthelabo Canada Inc. also instituted a prohibition action in the Federal Court of Canada against Apotex and the Minister of Health in response to a NOA directed against Canadian Patent 2,334,870 covering the form 2 polymorph of clopidogrel bisulfate. Apotex seeks approval of its ANDS before expiration of the '870 patent in 2019. Apotex alleges in its NOA that it does not infringe the '870 patent and that it is invalid. That action was discontinued.

Sanofi-Aventis and Sanofi-Synthelabo Canada Inc. instituted a prohibition action in the Federal Court of Canada against Novopharm Limited (Novopharm) and the Minister of Health in response to a Notice of Allegation from Novopharm directed against Canadian Patent 1,336,777 covering clopidogrel bisulfate. Novopharm's NOA

The Company, together with a number of other pharmaceutical manufacturers, also has received subpoenas and other document requests from various government agencies seeking records relating to its pricing, sales and marketing practices, and "Best Price" reporting for drugs covered by Medicare and/or Medicaid and by the Public Health Service Act 340B program. The requests for records have come from the U.S. Attorneys' Offices for the District of Massachusetts, the Eastern District of Pennsylvania, and the Northern District of Texas, the Civil Division of the Department of Justice, the Offices of the Inspector General of the Department of Health and Human Services and the Office of Personnel Management (each in conjunction with the Civil Division of the Department of Justice), the Office of Pharmacy Assistance of the Health Resources and Services Administration (HRSA), and several states. In addition, requests for information have come from the House Committee on Energy & Commerce and the Senate Finance Committee in connection with investigations that the committees are currently conducting into Medicaid Best Price issues and the use of educational grants by pharmaceutical companies.

As previously disclosed, in mid-2003, the Company initiated an internal review of certain of its sales and marketing practices, focusing on whether these practices comply with applicable anti-kickback laws and analyzing these practices with respect to compliance with (1) Best Price reporting and rebate requirements under the Medicaid program and certain other U.S. governmental programs, which reference the Medicaid rebate program and (2) applicable FDA requirements. The Company has met with representatives of the U.S. Attorney's Office for the District of Massachusetts to discuss the review and has received related subpoenas from that U.S. Attorney's Office, including a subpoena received on May 5, 2005, for documents relating to possible off label promotion of ABILIFY*. The Company's internal review is expected to continue until resolution of pending governmental investigations of related matters.

The Company is producing documents and actively cooperating in the investigations, which could result in the assertion of civil and/or criminal claims. The Company has reserves for liabilities in relation to pharmaceutical pricing and sales and marketing practices of $146 million. It is not possible at this time to reasonably assess the final outcome of these matters. In accordance with GAAP, the Company has determined that the above amount represents minimum expected probable losses with respect to these matters, which losses could include the imposition of fines, penalties, administrative remedies and/or liability for additional rebate amounts. Eventual losses related to these matters may exceed these reserves, and the further impact could be material. The Company does not believe that the top–end of the range for these losses can be estimated. If the Company were not to prevail in final, non–appealable determinations of these investigations, the impact could be material.

As previously disclosed, in 2004 the Company undertook an analysis of its methods and processes for calculating prices for reporting under governmental rebate and pricing programs related to its U.S. Pharmaceuticals business. The analysis was completed in early 2005. Based on the analysis, the Company identified the need for revisions to the methodology and processes used for calculating reported pricing and related rebate amounts and implemented these revised methodologies and processes beginning with its reporting to the Federal government agency with primary responsibility for these rebate and price reporting obligations, the Centers for Medicare and Medicaid Services (CMS) in the first quarter of 2005. In addition, using the revised methodologies and processes, the Company also has recalculated the "Best Price" and "Average Manufacturer's Price" required to be reported under the

**Note 20 LEGAL PROCEEDINGS AND CONTINGENCIES (Continued)**

Company's federal Medicaid rebate agreement and certain state agreements, and the corresponding revised rebate liability amounts under those programs for the three-year period 2002 to 2004. Upon completion of the analysis in early 2005, the Company determined that the estimated rebate liability for those programs for the three-year period 2002 to 2004 was actually less than the rebates that had been paid by the Company for such period. Accordingly, in the fourth quarter of 2004, the Company recorded a reduction to the rebate liability in the amount of the estimated overpayment. The Company has submitted proposed revisions and an updated estimate to CMS for review, and more recently has notified the government that it will be submitting a further updated estimate correcting recently identified programming errors. The Department of Justice (DOJ) has informed the Company that it also is reviewing the submission in conjunction with the previously disclosed subpoena received by the Company from the DOJ relating to, among other things, "Best Price" reporting for drugs covered by Medicaid as discussed in more detail above, and has requested the Company to provide additional information regarding the proposed revisions and

estimate. These agencies may take the position that further revisions to the Company's methodologies and calculations are required. The Company believes, however, based on current information, that any such recalculation for 2002 to 2004 period is not likely to result in material rebate liability. However, due to the uncertainty surrounding the recoverability of the Company's estimated overpayment arising from the review process described above, the Company recorded a reserve in an amount equal to the estimated overpayment.

## SIGNATURES

Pursuant to the requirements of Section 13 or 15 (d) of the Securities Exchange Act of 1934, the Registrant has duly caused this Report to be signed on its behalf by the undersigned, thereunto duly authorized.

BRISTOL-MYERS SQUIBB COMPANY
(Registrant)

By            /s/ Peter R. Dolan

Peter R. Dolan
*Chief Executive Officer*

Date: March 13, 2006

Pursuant to the requirements of the Securities Exchange Act of 1934, this Report has been signed below by the following persons on behalf of the Registrant and in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /s/ Peter R. Dolan<br>(Peter R. Dolan) | Chief Executive Officer<br>(Principal Executive Officer) | March 13, 2006 |
| /s/ Andrew R.J. Bonfield<br>(Andrew R.J. Bonfield) | Chief Financial Officer<br>(Principal Financial Officer) | March 13, 2006 |
| /s/ Joseph C. Caldarella<br>(Joseph C. Caldarella) | Vice President and Controller<br>(Principal Accounting Officer) | March 13, 2006 |
| /s/ James D. Robinson III<br>(James D. Robinson III) | Chairman of the Board of Directors | March 13, 2006 |
| /s/ Robert E. Allen<br>(Robert E. Allen) | Director | March 13, 2006 |
| /s/ Lewis B. Campbell<br>(Lewis B. Campbell) | Director | March 13, 2006 |
| /s/ Vance D. Coffman<br>(Vance D. Coffman) | Director | March 13, 2006 |
| /s/ James M. Cornelius | Director | March 13, 2006 |

(James M. Cornelius)

| | | |
|---|---|---|
| /s/ LOUIS J. FREEH | Director | March 13, 2006 |
| (Louis J. Freeh) | | |
| /s/ LOUIS V. GERSTNER, JR. | Director | March 13, 2006 |
| (Louis V. Gerstner, Jr.) | | |
| /s/ LAURIE H. GLIMCHER, M.D. | Director | March 13, 2006 |
| (Laurie H. Glimcher, M.D.) | | |
| /s/ LEIF JOHANSSON | Director | March 13, 2006 |
| (Leif Johansson) | | |
| /s/ LOUIS W. SULLIVAN, M.D. | Director | March 13, 2006 |
| (Louis W. Sullivan, M.D.) | | |