UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

| | |
|---|---|
| STEVEN W. SAMPSON, TRUSTEE, | |
| Plaintiff, | |
| -against- | 07 Civ. 6890 (PAC) |
| JAMES D. ROBINSON III, LEWIS B. CAMPBELL, JAMES M. CORNELIUS, LAURIE H. GLIMCHER, M.D., VICKI L. SATO, PH.D., LEIF JOHANSSON, LOUIS J. FREEH, MICHAEL GROBSTEIN, and R. SANDERS WILLIAMS, M.D., | **FILED ELECTRONICALLY** |
| Defendants, | |
| and | |
| BRISTOL-MYERS SQUIBB COMPANY, | |
| Nominal Defendant. | |

------------------------------------------------------------------------x

### REPLY MEMORANDUM OF LAW OF BRISTOL-MYERS SQUIBB COMPANY AND THE DIRECTOR DEFENDANTS IN SUPPORT OF MOTION TO DISMISS

Lorin L. Reisner
Michael R. Potenza
Timothy T. Howard
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Nominal Defendant Bristol-Myers Squibb Company*

Dated:   New York, New York
           January 7, 2008

Kenneth Conboy
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
(212) 906-1200

*Attorneys for Defendants James D. Robinson III, Lewis B. Campbell, James M. Cornelius, Laurie H. Glimcher, M.D., Vicki L. Sato, Ph.D, Leif Johansson, Louis J. Freeh, Michael Grobstein and R. Sanders Williams, M.D.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................3

I.  THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE
    PLAINTIFF FAILED TO SATISFY THE DEMAND REQUIREMENT. ..............3

    A.  Plaintiff Offers No Particularized Facts Establishing a "Substantial
        Likelihood" of Personal Liability By Directors. .........................................5

    B.  Plaintiff's Attempt to Invoke the *Aronson* Standard Should be
        Rejected. ........................................................................................................9

CONCLUSION ................................................................................................................10

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Ferre v. McGrath*,
 No. 06-CV-1684 (CM), 2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007) ...................4, 5, 9

*Fink v. Weill*,
 No. 02-CV-10250 (LTS), 2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005) .......................9

*Halpert Enterprises, Inc. v. Harrison*,
 362 F. Supp. 2d 426 (S.D.N.Y. 2005) ........................................................................4, 5

*In re Abbott Laboratories Derivative Shareholders Litigation*,
 325 F.3d 795 (7th Cir. 2003) ...........................................................................................9

*In re Forest Laboratories, Inc. Derivative Litigation*,
 450 F. Supp. 2d 379 (S.D.N.Y. 2006) ............................................................................4

*In re Oxford Health Plans, Inc. Securities Litigation*,
 192 F.R.D. 111 (S.D.N.Y. 2000) ....................................................................................8

*In re Pfizer Inc. Derivative Securities Litigation*,
 503 F. Supp. 2d 680 (S.D.N.Y. 2007) ..................................................................3, 5, 8

*In re Veeco Instruments, Inc. Securities Litigation*,
 434 F. Supp. 2d 267 (S.D.N.Y. 2006) ............................................................................8

*Loveman v. Lauder*,
 484 F. Supp. 2d 259 (S.D.N.Y. 2007) ............................................................3, 7, 9, 10

*McCall v. Scott*,
 239 F.3d 808 (6th Cir. 2001) ..........................................................................................8

*McSparran v. Larson*,
 No. 04-CV-0041, 2006 U.S. Dist. LEXIS 3787 (N.D. Ill. Jan. 27, 2006) .......................8

*McSparran v. Larson*,
 No. 04-CV-0041, 2006 U.S. Dist. LEXIS 53773 (N.D. Ill. May 3, 2006) ......................8

**STATE CASES**

*Andreae v. Andreae*,
  C.A. No. 11905, 1992 WL 43924 (Del. Ch. Mar. 5, 1992) ............................................10

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984)......................................................................................................5, 9

*Beebout v. Dolan*,
  Index No. 602579/07 (N.Y. Sup. Ct. Dec. 11, 2007).......................................................3

*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003) ................................................................................................6

*In re Caremark International Inc. Derivative Litigation*,
  698 A.2d 959 (Del Ch. 1996)...............................................................................4, 5, 8, 9

*Rales v. Blasband*,
  634 A.2d 927 (Del. 1993)..................................................................................................3, 4, 5, 9

*Stone v. Ritter*,
  911 A.2d 362 (Del. 2006)........................................................................................................6

Bristol-Myers Squibb Company ("BMS" or the "Company") and the members of the BMS Board of Directors named as defendants ("the Director Defendants") submit this reply memorandum of law and accompanying Second Declaration of Lorin L. Reisner ("Sec. Reisner Decl."), in further support of their motion to dismiss.

## **PRELIMINARY STATEMENT**

BMS and the Director Defendants demonstrated in their opening memorandum ("BMS Mem.") that the purported derivative claims in the Amended Complaint should be dismissed under the applicable Delaware law because plaintiff failed to make a pre-suit demand on the Board and cannot establish that a demand would be futile. BMS Mem. 11-24. The Amended Complaint contains no particularized allegations creating any doubt as to the Board's capacity to exercise independent and disinterested business judgment in responding to a demand. *Id*. 14-24.

Like the Amended Complaint, plaintiff's opposition memorandum ("Pl. Mem.") slings a variety of unsupportable conclusory allegations in an attempt to support contentions that the Board either "knew" of alleged management misconduct in connection with the proposed settlement of the Plavix litigation or ignored "red flags" of such misconduct. Pl. Mem. 2, 17-18. After cutting through plaintiff's rhetoric, the following is clear:

- The Amended Complaint contains no particularized allegations of any misconduct by any of the directors. Apart from wholly conclusory assertions that undifferentiated directors "knowingly approved" or "participated in, approved and/or permitted" the misconduct alleged, Am. Complaint ¶ 151, there is no particularized allegation that any director participated in or was aware of any of the alleged wrongdoing by management. Although plaintiff repeatedly refers to the Antitrust Division investigation, Pl. Mem. 9-10, 20-21, plaintiff does not and cannot allege that the Antitrust Division asserted any improper conduct of any kind by any director.

- The purported "red flags" identified by plaintiff are "red herrings." Far from serving as a "red flag," the 2003 FTC Consent Order, as acknowledged by plaintiff, established FTC review as a safeguard against future misconduct. Am. Complaint ¶ 84. The FTC's unwillingness to approve the initial Plavix agreement cannot possibly be seen as an indication that the agreement "ran afoul of the law" or that "something untoward was occurring," Pl. Mem. 7, particularly where the FTC itself invited BMS to submit a revised agreement. *Id*.; Am. Complaint ¶ 89. Indeed, the FTC's continued involvement in the settlement review process confirmed that safeguards were in place and the existence of an ongoing regulatory dialogue. Similarly, plaintiff's new assertion (not in the Amended Complaint) that because the revised Plavix agreement was "successfully renegotiated" within "a few" weeks after the FTC declined to approve the initial agreement, it therefore was a "red flag" that "something was amiss," Pl. Mem. 8, also is unsupportable. As reflected in public filings of which the Court may take judicial notice (and as acknowledged in the Amended Complaint, ¶ 108) the revised agreement provided for earlier marketplace entry by Apotex with a longer period of potential market exclusivity yielding substantial new economic benefits. There was no reason (and no particularized facts support any reason) for the Board to have believed that anything was amiss.

- There were other indications that the Plavix settlement process was proceeding properly. In addition to the safeguard of FTC review, experienced outside counsel was participating in the settlement process and the Company had the added benefit of a Board-approved federal monitor overseeing the Company's compliance efforts. *Id*. ¶¶ 88, 107, 122.

- The Board took decisive and responsible action after questions were raised, including terminating the Company's former CEO and General Counsel. Am. Complaint ¶ 122. As plaintiff acknowledges, among other things, the Board received reports from outside counsel that were "prepared and delivered at the request of the Board as part of its ongoing assessment" of the Plavix matter, and also heard from the federally appointed monitor who had conducted his own investigation. *Id*.

Plaintiff offers no legal support for the novel position that the Board had an obligation to "intervene and either conduct the negotiations itself, or demand that a representative be present." Pl. Mem. 2. There is no such obligation. Indeed, just last month, similar derivative claims filed in New York state court against BMS directors (including six of the directors named as defendants here) were dismissed based on the

plaintiff's failure to make a pre-litigation demand on the Board. In that case, Justice Herman Cahn of New York Supreme Court, applying the same Delaware law applicable here, ruled that the demand requirement was not excused because there were no particularized allegations that "create a reasonable doubt that the moving directors were disinterested or independent" or that the director defendants "were involved in the decision to approve the unlawful conduct." (Opinion and Order dated December 11, 2007 in *Beebout v. Dolan, et al.*, Index No. 602579/07 (N.Y. Supreme Court) at 9, 10 (copy attached at Sec. Reisner Decl. Ex. A)). The same rationale applies here.

## ARGUMENT

**I. THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO SATISFY THE DEMAND REQUIREMENT.**

Delaware law requires as a condition precedent to a shareholder derivative action that the shareholder either: (i) make a pre-litigation demand on the board to commence an action on behalf of the company or (ii) plead particularized factual allegations demonstrating that a demand would be "futile." BMS Mem. 11-13 (citing cases). Where, as here, plaintiff does not challenge a particular business decision made by the Board, a demand will be excused as futile only if "the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint [was] filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband,* 634 A.2d 927, 934 (Del. 1993). Courts repeatedly have dismissed derivative actions where, as here, there are no particularized facts to support conclusory and speculative allegations of a lack of director independence or disinterest. *In re Pfizer Inc. Deriv. Sec. Litig.*, 503 F. Supp. 2d 680, 685-86

(S.D.N.Y. 2007) (granting motion to dismiss); *Loveman v. Lauder*, 484 F. Supp. 2d 259, 271 (S.D.N.Y. 2007) (same); *Ferre v. McGrath*, No. 06-CV-1684 (CM), 2007 WL 1180650, at *10 (S.D.N.Y. Feb. 16, 2007) (same); *In re Forest Labs., Inc. Deriv. Litig.,* 450 F. Supp. 2d 379, 396 (S.D.N.Y. 2006) (same); *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426, 433 (S.D.N.Y. 2005) (same).

The Amended Complaint offers no particularized facts to support the conclusory allegation that the Board participated in or was aware of management's alleged wrongdoing in connection with the proposed settlement of the Plavix litigation. The wholly conclusory allegations that the Director Defendants "participated in, approved and/or permitted" the alleged wrongful conduct, Am. Complaint ¶ 151, are insufficient to excuse the demand requirement. BMS Mem. 16-18; *Ferre v. McGrath*, 2007 WL 1180650, at *9 (demand not excused based on conclusory allegations); *In re Forest Labs.,* 450 F. Supp. 2d at 390 (demand not excused based on conclusory allegations that directors "participated in, approved, and or permitted the wrongs alleged"). Although plaintiff repeatedly refers to the Antitrust Division investigation, Pl. Mem. 9-10, 20-21, plaintiff does not and cannot allege that the Antitrust Division asserted any improper conduct of any kind by any member of the Board.

Failing to plead any particularized facts showing any wrongful action by the Board, plaintiff asserts that demand should be excused based on the Board's alleged failure to manage and oversee the Company – a so-called "*Caremark* claim" under Delaware law. BMS Mem. 18; Am. Complaint ¶¶ 145-49, 153-57, 160-62. *See In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del Ch. 1996). Plaintiff argues alternatively that: (1) under the

applicable *Rales* standard, a majority of directors are not disinterested because they are at risk of being held liable for a lack of oversight, Pl. Mem. 19-24; and (2) the Defendant Directors made a "conscious decision" not to exercise oversight and therefore cannot have validly exercised business judgment under the standard established by *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). Pl. Mem. 17-19. Both of these arguments are meritless.

      **A.**      **Plaintiff Offers No Particularized Facts Establishing a "Substantial Likelihood" of Personal Liability By Directors.**

Plaintiff's arguments based on alleged lack of director disinterest, Pl. Mem. 19-24, fail because plaintiff offers no particularized facts that establish a "substantial likelihood" of personal liability by directors. *Rales*, 634 A.2d at 936 (plaintiff must demonstrate that "potential for liability is not 'a mere threat' but instead may rise to a 'substantial likelihood'") (quoting *Aronson*, 473 A.2d at 815); *Pfizer*, 503 F. Supp. 2d at 685 (director has an interest "that excuses demand only when the potential for liability rises to a 'substantial likelihood'") (citation omitted).

The type of failure of oversight claim upon which plaintiff relies "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Caremark*, 698 A.2d at 967. Similar arguments repeatedly have been rejected as the basis for excusing the demand requirement. *See Ferre*, 2007 WL 1180650, at *8-*9 (no particularized facts established that the directors had "clear notice of serious . . . irregularities and simply chose to ignore them or, even worse, to encourage their continuation"); *Pfizer*, 503 F. Supp. 2d at 685 (complaint did not "set forth directors' knowledge of the problems . . . or allege obvious danger signs"); *Halpert*, 2005 WL 1773686, at *2 (plaintiff failed to "plead with particularity what obvious danger signs were

5

ignored"). The same result should apply here because plaintiff alleges no particularized facts demonstrating "that the directors were conscious of the fact that they were not doing their jobs," *Guttman v. Huang*, 823 A.2d 492, 506 (Del. Ch. 2003), intentionally acted "with a purpose other than that of advancing the best interests of the corporation" or "fail[ed] to act in the face of a known duty to act." *Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006).

None of the purported "red flags" identified by plaintiff can possibly be construed as obvious "red flag" warnings of wrongdoing in connection with the Plavix settlement that were ignored by the Board. Far from serving as a "red flag," Pl. Mem. 7, the 2003 FTC Consent Order established FTC review as a safeguard against any future improper arrangements. BMS Mem. 21-22; Am. Complaint ¶ 84. Similarly, the FTC's unwillingness to approve the initial Plavix agreement cannot possibly be seen as an "obvious danger sign" or an indication that the agreement "ran afoul of the law," Pl. Mem. 7, particularly where the FTC invited BMS to submit a revised agreement. BMS Mem. 20; Am. Complaint ¶ 89. The FTC's continuing involvement in the review process confirmed that safeguards remained in place and the existence of an ongoing regulatory dialogue.

Plaintiff's new assertion—not alleged in the Amended Complaint—that because a revised agreement removing objectionable provisions was "successfully renegotiated" within "a few" weeks after the FTC declined to approve the initial agreement, it therefore was a "red flag" that "something was amiss," Pl. Mem. 8, also is unsupportable. As reflected in SEC filings of which the Court may take judicial notice, the revised agreement provided Apotex with significant new economic benefits, including earlier marketplace entry (June 2011 rather than September 2011), and a longer period of potential marketplace

6

exclusivity (eight months as opposed to six months).[1]  Given these substantial additional economic benefits provided to Apotex, there was no reason to suspect anything was amiss based on the negotiation of a revised agreement, and plaintiff's speculative and conclusory allegations to the contrary must be rejected.  *See Loveman*, 484 F. Supp. 2d at 267 (rejecting director interest arguments that were "speculative" and were "simply lawyers' arguments rather than particularized facts"); BMS Mem. 13 (conclusory allegations "carry no weight") (citing cases).

Plaintiff also offers no support for its novel assertion that the Board had an obligation "to intervene and either conduct the negotiations itself, or demand that a representative be present."  Pl. Mem. 2.  Plaintiff's argument also ignores the various "green lights" (acknowledged in the Amended Complaint and other materials of which the Court may properly take notice) that the settlement process would be and was operating properly.  BMS Mem. 21-22.  In addition to the safeguards provided by FTC review, experienced outside counsel was participating in the settlement process, Am. Complaint ¶¶ 88, 107, 122, the Company had the additional benefit of a Board-approved federal monitor overseeing the

---

[1]  Under the revised agreement, the license granted to Apotex commenced June 1, 2011, approximately three and one-half months earlier than in the original agreement.  *See* Sec. Reisner Decl. Ex. B (excerpts of Form 10-Q filed August 8, 2006, including copies of original settlement agreement and revised agreement attached as Exhibits 99.1 and 99.2, respectively).  These additional months of market exclusivity or semi-exclusivity had enormous economic value.  *See* Am. Complaint ¶¶ 115, 129 (describing Apotex generic entry and press reports referring to $1 billion in lost sales to Apotex).  In addition, the revised agreement added a provision requiring that BMS/Sanofi would not waive potential pediatric exclusivity with respect to any ANDA filer prior to January 31, 2012 (Sec. Reisner Decl Ex. B at Ex. 99.2 ¶ 4), thereby providing Apotex with an eight month license period before other ANDA filers could be licensed in the event that pediatric exclusivity was granted by the FDA under 21 U.S.C. § 355a.  *See* Sec. Reisner Decl. Ex. B.

7

Company's compliance function, *id.* ¶ 122, and an array of other corporate governance safeguards were in place. BMS Mem. 22 & n.6 (describing additional compliance safeguards).

None of the cases cited at Pl. Mem. 21-23 support plaintiff's arguments. Each of those cases involved particularized allegations that directors possessed actual notice of the specific misconduct at issue.[2] The Amended Complaint provides no particularized allegations regarding any "obvious danger signs" that the alleged misconduct relating to the Plavix settlement would occur despite the various safeguards in place. *Pfizer*, 503 F. Supp. 2d at 685 (demand not excused where complaint did not establish with particularity that directors had knowledge of or ignored "obvious danger signs" about product problems). Accordingly, because plaintiff has not asserted and cannot identify particularized allegations or any basis for establishing a "substantial likelihood" that the Defendant Directors are

---

[2] *See McCall v. Scott*, 239 F.3d 808, 820 (6th Cir. 2001) (directors possessed audit reports and other information showing "unmistakable signs" of improper reimbursement practices and other specific misconduct alleged in complaint); *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 277-78 (S.D.N.Y. 2006) (directors took no action for more than a year despite having actual knowledge of alleged accounting deficiencies and export control violations); *In re Oxford Health Plans, Inc. Sec. Litig.*, 192 F.R.D. 111, 115 (S.D.N.Y. 2000) (directors had knowledge of repeated misrepresentations to the financial markets, were beholden to a former officer defendant and personally benefited from stock sales as a result of the alleged misconduct). Plaintiff's reliance on *McSparran v. Larson*, No. 04-CV-0041, 2006 U.S. Dist. LEXIS 3787 (N.D. Ill. Jan. 27, 2006), is misplaced because that decision was reversed on reconsideration. *See McSparran v. Larson*, No. 04-CV-0041, 2006 U.S. Dist. LEXIS 53773, at *16 (N.D. Ill. May 3, 2006) (rejecting lack of oversight allegations as basis for excusing demand and holding that no particularized facts established "that a majority of . . . directors face a substantial likelihood of personal liability").

personally liable under the rigorous *Caremark* standard, the demand requirement may not be excused. BMS Mem. 15-16 (citing cases).

        **B.**     **Plaintiff's Attempt to Invoke the *Aronson* Standard Should be Rejected.**

Plaintiff incorrectly attempts to invoke the test established by *Aronson v. Lewis*. Pl. Mem. 16. The *Aronson* test plainly is inapplicable, however, because that standard requires that a *decision* of the Board be challenged, and a *Caremark* claim in its very essence addresses board *inaction*. BMS Mem. 23; *Rales*, 634 A.2d at 933 ("The essential predicate for the *Aronson* test is the fact that a *decision* of the board of directors is being challenged in the derivative suit") (emphasis in original); *Loveman*, 484 F. Supp. 2d at 266 (the "*Rales-Caremark*" standard applies to complaints containing allegations of director inaction or inattention); *Ferre*, 2007 WL 1180650, at *3 ("Where . . . the derivative plaintiff asserts a *Caremark* claim, the test for whether pre-suit demand on the Board is excused as futile is set forth in *Rales* . . .").[3]

---

[3] Plaintiff's attempt to evade the rule by arguing that the Amended Complaint challenges a "conscious decision" to refrain from exercising oversight in reliance on *In re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795 (7th Cir. 2003), Pl. Mem. 11-12, is misplaced. In *Abbott Laboratories*, the *Aronson* test was applied where the complaint contained particularized allegations that the board failed to act after being presented repeatedly with actual notice of the specific uncorrected wrongdoing alleged in the complaint. *Id.* at 805-06. In stark contrast, the Amended Complaint here lacks any particularized allegations (or any allegations at all) that the Board had actual notice of any misconduct in connection with the proposed settlement of the Plavix litigation. Plaintiff instead relies on generalized allegations that the Board *should* have known about the wrongdoing, Pl. Mem. 17-19, a basis upon which courts specifically have rejected the application of *Abbott Laboratories*. *See, e.g., Fink v. Weill*, No. 02-CV-10250 (LTS), 2005 WL 2298224, at *3 n.6 (S.D.N.Y. Sept. 19, 2005) (rejecting application of *Abbott Laboratories* and *Aronson* standard where directors not alleged to have specific knowledge of wrongdoing alleged in complaint).

Even if the *Aronson* test were applied, the speculative and wholly conclusory allegations of the Amended Complaint are insufficient to establish any reasonable doubt as to the good faith exercise of business judgment by the directors. BMS Mem. 23; *Fink*, 2006 WL 2298224, at *3 n.6 (no particularized allegations of conscious wrongdoing to establish demand futility under *Aronson*); *Andreae v. Andreae*, C.A. No. 11905, 1992 WL 43924, at *4 (Del. Ch. Mar. 5, 1992) (same); *Loveman*, 484 F. Supp. 2d at 264 n. 24 (same).

## CONCLUSION

For the foregoing reasons and those set forth in the opening memorandum of BMS and the Director Defendants, the Amended Complaint should be dismissed.

Dated: New York, New York
January 7, 2008

| | |
|---|---|
| DEBEVOISE & PLIMPTON LLP | LATHAM & WATKINS LLP |
| By: /s/ Lorin L. Reisner<br>    Lorin L. Reisner<br>    Michael R. Potenza<br>    Timothy T. Howard<br>    919 Third Avenue<br>    New York, New York 10022<br>    (212) 909-6000 (telephone)<br>    (212) 909-6836 (fax)<br><br>*Attorneys for Nominal Defendant Bristol-Myers Squibb Company* | By: /s/ Kenneth Conboy<br>    Kenneth Conboy<br>    885 Third Avenue<br>    New York, New York 10022<br>    (212) 906-1200 (telephone)<br>    (212) 751-4864 (fax)<br><br>*Attorneys for Defendants James D. Robinson III, Lewis B. Campbell, James M. Cornelius, Laurie H. Glimcher, M.D., Vicki L. Sato, Ph.D, Leif Johansson, Louis J. Freeh, Michael Grobstein and R. Sanders Williams, M.D.* |