UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN W. SAMPSON, TRUSTEE,<br><br>    Plaintiff,<br><br>- against -<br><br>JAMES D. ROBINSON III, LEWIS B. CAMPBELL, JAMES M. CORNELIUS, LAURIE H. GLIMCHER, M.D., VICKI L. SATO, PH.D., LEIF JOHANSSON, LOUIS J. FREEH, MICHAEL GROBSTEIN, and R. SANDERS WILLIAMS, M.D.,<br><br>    Defendants,<br><br>and<br><br>BRISTOL-MYERS SQUIBB COMPANY,<br><br>    Nominal Defendant. | Case No. 1:07-CV-06890-PAC<br><br>Related Case No. 1:07-cv-05867-PAC<br><br>**<u>FILED ELECTRONICALLY</u>** |

**DERIVATIVE PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION AND TO ALTER OR AMEND THE ORDER AND JUDGMENT <u>AND FOR LEAVE TO AMEND THE COMPLAINT</u>**

                  Daniel W. Krasner (DK-6381)
                  Gregory Mark Nespole (GN-6820)
                  Alexander H. Schmidt (AS-8304)
                  Paulette S. Fox (PF-2145)
                  WOLF HALDENSTEIN ADLER
                  FREEMAN & HERZ LLP
                  270 Madison Avenue
                  New York, New York 10016
                  Telephone: (212) 545-4600

                  *Counsel for Derivative Plaintiff*
                  *Steven W. Sampson, Trustee*

Dated: New York, New York
     September 5, 2008

## INTRODUCTION

By Opinion and Order dated August 20, 2008 (the "Derivative Order"),[1] this Court granted the Motion to Dismiss the Amended Verified Shareholder Derivative Complaint (the "Derivative Complaint"),[2] filed by Nominal Defendant Bristol-Myers Squibb Company ("BMY" or the "Company") and the Director Defendants,[3] pursuant to Federal Rule of Civil Procedure 23.1. A Judgment, implementing the Derivative Order, was signed and entered for the Clerk of the Court on August 21, 2008 (the "Judgment").[4] Derivative Plaintiff Steven W. Sampson, Trustee, respectfully submits this memorandum of law in support of his motion, (i) pursuant to Local Civil Rule 6.3 for reconsideration; (ii) pursuant to Federal Rule of Civil Procedure 59(e) for an order amending the Derivative Order and the Court's Judgment to provide that the dismissal is without prejudice; and (iii) pursuant to Federal Rule of Civil Procedure 15(a) for an order granting leave to file an amended complaint.[5]

---

[1] The Derivative Order is attached as Exhibit A to the Affidavit of Paulette S. Fox, submitted contemporaneously herewith ("Fox Aff.").

[2] The Derivative Complaint is attached as Exhibit B to the Fox Aff.

[3] The Derivative Complaint named nine members of the BMY Board: James D. Robinson III; Lewis B. Campbell; James M. Cornelius; Laurie H. Glimcher, M.D.; Vicki L. Sato, Ph.D.; Leif Johansson; Louis J. Freeh; Michael Grobstein; and R. Sanders Williams, M.D. (collectively, "Director Defendants"). Nominal Defendant BMY and the Director Defendants are collectively referred to herein as "Defendants."

[4] The Judgment is attached as Exhibit C to the Fox Aff. Simultaneous with the Derivative Order granting Defendants' Motion to Dismiss, on August 19, 2008, this Court denied the Motions to Dismiss the Amended Class Action Complaint (the "Class Complaint"), filed by BMY, Peter Dolan and Andrew Bodnar, in the related class action securities litigation, *In re Bristol Myers Squibb Co.,* No. 07-Civ-5867-PAC (the "Class Order"). The Class Order is attached as Exhibit D to the Fox Aff.

[5] Local Civil Rule 6.3 requires motions for reconsideration to be made within ten (10) days of the entry of judgment, in the case of orders resulting in judgments. Federal Rule of Civil Procedure 6(a) states that, in cases where the time prescribed for any act is less than eleven (11) days, intermediate weekends and legal holidays shall be excluded from the computation of time. This motion is therefore timely because it is filed on or before September 5, 2008.

1

**PRELIMINARY STATEMENT**

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Ronzani v. Sanofi*, 899 F.2d 195, 198 (2d Cir. 1990). Rule 15(a) provides that leave to amend or replead the complaint shall be "freely given when justice so requires." *See* Fed. R. Civ. P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 182-83 S. Ct. 227, 230 (1962). Indeed, recognizing that Federal Rules favor resolving cases on their merits, courts in this jurisdiction have long been reluctant "to preclude the prosecution of a possibly meritorious claim because of defects in the pleadings." *Ross v. A.H. Robins Co*., 607 F.2d 545, 547 (2d Cir. 1979) (reversing dismissal with prejudice). Here, this relief was expressly requested in Derivative Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss of Nominal Defendant Bristol-Myers Squibb Company and the Director Defendants, filed on December 17, 2007 ("Opp. Br."):

> As demonstrated herein, the Complaint properly alleges demand futility and states a claim. However, if the Court determines that there are any deficiencies in the allegations against Defendants, derivative plaintiff respectfully requests he be granted leave to replead. *See* Fed. R. Civ. P. 15(a) (leave to replead shall be freely given). *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to replead "should, as the rules require, be 'freely given'").

Opp. Br. at 25, n.21.[6] However, the Court entered final judgment without allowing Derivative Plaintiff the opportunity to cure any of the factual deficiencies the Court found existed in the Derivative Complaint. In view of the provision in Rule 15(a) that leave to amend shall be freely given when justice so requires, the Second Circuit has said that "it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Nat'l Petrochem. Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991).

---

[6] This excerpt from the Opposition Brief is attached as Exhibit E to the Fox Aff.

2

In light of the factual findings in this Court's related Class Opinion, given the opportunity, Derivative Plaintiff believes he could provide the specificity respecting demand futility the Court found was lacking in the operative Derivative Complaint and cure its factual deficiencies. The findings of undisputed facts in the Class Action are inextricably tied and directly related to those in this Derivative Action, and therefore bolster the strength of Derivative Plaintiff's claims of wrongdoing alleged against Director Defendants. With the Class Action now going forward, BMY shareholders deserve the opportunity to seek recompense from the BMY Board, as well, by amending the complaint to further evidence the BMY Board's knowledge of and complicity in the improper conduct at the Company described in the Class Opinion.

As explained below, Derivative Plaintiff respectfully submits that this Derivative Action is a "proper case to take into account the nature of the proposed amendment," thus warranting amending the Judgment to provide dismissal without prejudice under Rule 59(e) and allowing leave to amend the Derivative Complaint under Rule 15(a).

**SUMMARY OF THE PROCEDURAL HISTORY AND THE DERIVATIVE ORDER**

Derivative Plaintiff filed this action on behalf of Nominal Defendant BMY on July 31, 2007, and filed the operative amended Derivative Complaint on October 15, 2007. The Derivative Complaint alleges breaches of fiduciary duty by the BMY Board and seeks damages on behalf of the Company. Defendants subsequently moved to dismiss the Derivative Complaint pursuant to Federal Rule of Civil Procedure 23.1, and this Court granted that application in the Derivative Opinion and Judgment.

The dismissal, on the ground that Derivative Plaintiff failed to sufficiently plead demand futility, has as its source, this Court's application of the requirement that the shareholder, in a derivative action, must plead "with particularity why a demand would have been futile," Deriv. Op. at 5 (quoting *In re Abbott Labs. Deriv. S'holder Litig.*, 325 F.3d 795, 804 (7th Cir. 2001)), as

3

well as the Court's application of the two tests for demand futility under Delaware law: the *Aronson* test and the *Rales* test (and the *Caremark* elaboration on the *Rales* test). *See* Deriv. Op. at 6 (citing *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984); *Rales v. Blasband*, 634 A.2d 927 (Del. 1993); *In re Caremark*, 698 A.2d 959 (Del. Ch. 1996)).[7]

Having determined that the Derivative Complaint's pleadings fail under either test, this Court dismissed the entire Derivative Action without leave to replead. The Derivative Opinion is silent as to why an opportunity to amend was not allowed. As shown below, granting leave to replead is warranted in this case.

## SUMMARY OF THE RELATED CLASS ORDER

A brief summary of the findings in the Class Order, which found that the class complaint was pled with specificity, highlights factual allegations that undoubtedly bolster Derivative Plaintiff's ability to establish the BMY Board's wrongdoing with additional particularity. In particular, the Class Order found the following facts were pled with the requisite specificity:

- "It is undisputed that Bristol-Myers did not disclose the information sought by Plaintiffs, including the terms of the initial and revised settlement agreements, and the initial regulatory disapproval by the state attorneys general." Class Op. at 17.

- "Plaintiffs have plausibly pleaded that Bristol-Myers's statements were rendered misleading by the failure to include relevant information about the nature of the settlement negotiations and the terms of the settlement agreement."[8] Class Op. at 18.

---

[7] As this Court accurately explained (Deriv. Op. at 6): *Aronson* is a two-part test which is applied when the challenged board conduct is "conscious," that is, when a board has consciously decided whether or not to act in a given circumstance. *See Aronson*, 473 A.2d at 813. Application of the *Aronson* test, therefore, implies some volition on the part of the BMY Board. *Id. Rales*, on the other hand, is a single-part inquiry which is applied when the challenged board conduct is inaction, that is, "[w]here there is no conscious decision by directors to act or refrain from acting…." *Rales*, 634 A.2d at 933.

[8] In particular, BMY failed to disclose in its public statements that, in the event of regulatory disapproval of the settlement and subsequent litigation, BMY had relinquished certain legal rights that would otherwise have been available in the patent litigation. Class Op. at 17.

4

- "Bristol-Myers's disclosures that Apotex's launch would be 'at risk' and that it would 'vigorously pursue' the patent litigation—without accompanying statements or disclosures that it had bargained away certain statutory remedies—were materially misleading." Class Op. at 19.

- "The Plaintiffs have identified the purportedly misleading statements and/or omissions ('vigorously pursue' and 'at risk'), identified the relevant speaker (Dolan and/or Bristol-Myers), provided the dates the statements were made (various), and stated why the statements were fraudulent (because they materially misled the market with respect to the Plavix negotiations) with sufficient particularity." Class Op. at 19.

- "Apotex applied to the FDA to launch a generic form of Plavix, thereby threatening the exclusivity of the drug and perfecting Bristol-Myers's motive." Class Op. at 29.

- "Bristol-Myers responded to the threat by initiating a patent infringement suit and then attempting to enter into a settlement agreement with Apotex." Class Op. at 29.

- "As part of the settlement agreement, Bristol-Myers made significant concessions limiting the relief it would seek in the event of regulatory disapproval, but failed to disclose those concessions." Class Op. at 29.

- "Regulators rejected the initial terms of the settlement agreement, citing antitrust concerns." Class Op. at 30.

- "Instead of announcing the rejection, Bristol-Myers sought to quietly renegotiate the settlement, agreeing to more onerous demands, and keeping some of the objectionable terms in the form of 'secret' oral side agreements and then failed to disclose the renegotiations and the secret oral side agreements to regulators and/or the general public." Class Op. at 30.

- "When asked for written certification that the disclosed terms—those memorialized in the written settlement agreement—were the only terms, Bristol-Myers provided a false certification knowing that other undisclosed terms existed." Class Op. at 30.

The BMY Board was supine in the face of all these red flags, which this Court found as undisputed facts pled with the requisite particularity in the Class Action. Many (if not all) of these same facts were alleged in the Derivative Complaint. Derivative Plaintiff's proposed amended complaint will allege and demonstrate with specificity sufficient facts to give rise to a reasonable belief that a majority of the Director Defendants were aware of, and chose to ignore, the above facts. Thus, these undisputed facts found in the Class Opinion further strengthen the allegations of both the BMY Board's (a) conscious disregard of its duty and its inaction and

acquiescence in management misconduct and improper practices; and (b) its consequent substantial threat of personal liability.

## ARGUMENT

**I.   THE LEGAL STANDARD UNDER RULE 15(a) REQUIRES GRANTING DERIVATIVE PLAINTIFF'S RULE 59(e) MOTION TO AMEND THE JUDGMENT**

Motions to alter or amend judgments under Rule 59(e) and to reconsider or reargue under Local Civil Rule 6.3 are evaluated pursuant to the same standard. *See, e.g., In re Evergreen Mut. Funds Fee Litigation*, 240 F.R.D. 115, 117 (S.D.N.Y 2007). Admittedly, that standard is strict. Thus, "a motion for reconsideration may be granted if... the court overlooked (1) factual matters that were put before it on the underlying motion, or (2) controlling legal authority." *Ayazi v. New York City Bd. of Educ.*, No. 98-CV-7461, 2007 WL 879674, at *1 (E.D.N.Y. Mar. 21, 2007).

However, the typical application of Rule 59(e) is not sought here. Derivative Plaintiff is not alleging that this Court erred in overlooking facts and/or controlling law, but rather, more narrowly, that this Court's Judgment should be amended to allow for leave to amend the Derivative Complaint under Rule 15(a), since the Derivative Order failed to provide such relief notwithstanding the contemporaneous relevant findings in the related Class Action.

Accordingly, the Rule 59(e) amendment to make the Judgment without prejudice is the technical mechanism by which Court is then able to effectuate the Rule 15(a) standard and turn to the usual practice in the Second Circuit "upon granting a motion to dismiss to allow leave to replead." *Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991). Moreover, Rule 15(a)'s policy of liberal amendment is particularly appropriate here taking into consideration: (1) Derivative Plaintiff has not taxed the resources of this Court, nor Defendants, with multiple amendments, and (2) the unique procedural posture of this Derivative Action includes this Court's contemporaneous (and favorable) decision in the Class Action.

6

## II. THE PROPOSED AMENDED COMPLAINT WILL CLARIFY CERTAIN FACTUAL DEFICIENCIES AND PERMIT THIS COURT TO RECONSIDER SPECIFIC LEGAL CONCLUSIONS MADE IN THE DERIVATIVE ORDER

The proposed amended complaint would correct factual deficiencies, add new factual allegations, expand on already-pleaded facts, and provide an opportunity for this Court to reconsider certain legal issues. As explained below, Derivative Plaintiff firmly believes that -- given the opportunity -- he could improve upon the already-detailed Derivative Complaint and provide this Court with specificity on demand futility that was lacking previously.[9]

---

[9] Though it is not the focus of this motion, Derivative Plaintiff respectfully disagrees that he has not sufficiently alleged demand futility. In fact, as reinforced at the April 9, 2008 oral argument, counsel for Derivative Plaintiff explained: "the central theory of our case is essentially expressed in paragraphs 148 and 149 [of the Derivative Complaint]. We have enough particularized facts, if you ignore the more conclusory pled facts, to satisfy the particularity requirement." *See* Transcript, 24:23-25:2 (this excerpt is attached as Exhibit F to the Fox Aff.). These paragraphs argued demand futility by alleging as follows:

> The FTC's rejection of the initial Apotex Agreement on grounds that it smacked of anti-competitive conduct that mirrored the Company's checkered past was a "red flag" that should have alerted the Board that it was obligated to actively participate in the negotiations and process leading to the execution of the revised Apotex Agreement. The Bristol-Myers Board, instead, was supine in the face of this information. It allowed, absent direct involvement, Mr. Dolan and his lieutenants to negotiate with Apotex representatives surreptitiously. The result of this inaction in the face of information commanding action was the execution of an illegal arrangement that forced DOJ intervention and resulted in guilty pleas to a Felony Information. Deriv. Compl. ¶ 148.

> Moreover, the Bristol-Myers Board was obligated to exercise a greater degree of care and fidelity given the Company's history of misconduct. Bristol-Myers was already subject to a federal monitor under the FTC Consent Order. These circumstances alone confirm that once the initial Apotex Agreement was repudiated by the FTC -- for being potentially unlawful -- the Bristol-Myers Board was presented with a "red flag" indicating that something at the Company had gone awry and that the law was probably being broken, yet again. Once the initial Apotex Agreement was not approved by the FTC, the Bristol-Myers Board was obligated to conduct an investigation into the circumstances leading to the potentially unlawful agreement. It was obligated to insert its own representative at the negotiation table -- not leave the process to Mr. Dolan and his staff -- given that it was obvious that they had endeavored to engage in malfeasance. Furthermore, the Bristol-Myers Board should have discovered through simple acts of due diligence that the revised Apotex Agreement contained impermissible oral agreements restricting the Company's entrance into the generic arena. It should have inquired about and learned that Mr. Dolan and his colleagues agreed to forego recoverable damages in a desperate effort to secure near term profits and secure their positions as company managers. In light of all these "red flags" ignored by the Bristol-Myers Board, demand would be futile against them. Deriv. Compl. ¶ 149.

The Derivative Opinion does not discuss the particularity of these detailed allegations or their weight as evidence of demand futility.

7

As previously mentioned, this Court determined that the Derivative Complaint's pleadings fail under Delaware's two separate tests for demand futility in the shareholder derivative context: the *Aronson* test and the *Rales-Caremark* test. *See* Deriv. Op. at 6.

In particular, this Court found, upon an analysis of *Aronson* (assuming the BMY Board consciously decided not to act), the following:

- Plaintiff points to no specific individuals who are 'interested' or lack 'independence,' and makes no particularized allegations that the Board members would be liable for their actions with regard to the Apotex settlement." Deriv. Op. at 12.
- "Plaintiff totally fails to allege any facts, let alone sufficiently particularized facts, which give rise to an inference that [the Board] were interested, lacked independence, and had not exercised their best business judgment." Deriv. Op. at 12.

Derivative Plaintiff submits that the proposed amended complaint would add factual allegations establishing a reasonable doubt both as to whether a majority of the Defendant Directors were disinterested or lacked independence by clarifying that a majority of the Board was aware of and chose to disregard each of the facts identified at pages 4-5 above, and thus, that a majority of the BMY Board failed to exercise its best business judgment and consequently faces a substantial threat of personal legal liability.

This Court also found the following:

- "Given Bristol-Myers Board's steps to address prior misconduct, it is fair to say that the Board believed that the Apotex situation was under control and that management was behaving in accordance with both its Consent Decree and accepted principles of corporate governance." Deriv. Op. at 13.

Derivative Plaintiff submits that the proposed amended complaint would clarify that the BMY Board did not have a reasonable belief that the Apotex situation was under control. The Class Order's findings that "[i]nstead of announcing the rejection, Bristol-Myers sought to quietly renegotiate the settlement, agreeing to more onerous demands, and keeping some of the objectionable terms in the form of 'secret' oral side agreements and then failed to disclose the

8

renegotiations and the secret oral side agreements to regulators and/or the general public," and "[w]hen asked for written certification that the disclosed terms -- hose memorialized in the written settlement agreement -- were the only terms, Bristol-Myers provided a false certification knowing that other undisclosed terms existed," Class Op. at 30, add significance to this allegation.

And, in particular, this Court found, upon an analysis of *Rales-Caremark* (assuming the BMY Board failed to act and engaged in a sustained and systematic failure to oversee management), the following:

- "Plaintiff alleges only a generalized failure to scrutinize management's conduct." Deriv. Op. at 13.

Derivative Plaintiff submits that the proposed amended complaint would reinforce in greater detail the strength of the following allegation, which was not addressed in the Derivative Opinion: Former CEO Dolan and the "BMS Executive-1" (Bodnar), who had negotiated the revised Apotex agreement and its attendant illegal side deals, were both members of BMY's Executive Committee, which also included Director Defendant Robinson. *See* Deriv. Compl. ¶¶ 47, 93, 96. Since Mr. Dolan and "BMS Executive-1" (Bodnar) had a fiduciary duty to report their settlement activities to the Executive Committee and the Board, and since Director Defendant Robinson had a duty to report the same information to other Board members, including Director Defendant Sato when she joined the Board, the then-existing BMY Board members – six (to seven) of the nine Director Defendants – are ***presumed to have known*** about the "red flags" that should reasonably have warned them to exercise greater scrutiny over management's attempt to settle the Apotex litigation. *Abbott Labs.*, 325 F.3d at 806 (interpreting Delaware law) ("Where there is a corporate governance structure in place, [a court must] then

9

assume the corporate governance procedures were followed and that the board knew of the problems and decided that no action was required.").

This Court also made the following factual finding:

- "Given the safeguards put in place by the Board, the Board had no reason to suspect that the CEO and other members of senior management would continue to engage in suspect practices with regard to generic drug settlement agreements." Deriv. Op. at 14.

Derivative Plaintiff submits that the proposed amended complaint would clarify and add factual allegations evidencing how the Board did in fact have reason to suspect managements' misconduct. For example, the aforementioned allegations regarding the Executive Committee's knowledge of and acquiescence in the illegal conduct will show that the BMY Board knew the alleged "safeguards" were insufficient to prevent further management wrongdoing. Other new allegations will show that the "safeguards" on which the Court relied were not in fact sufficient to suspend the Board's suspicion that Dolan and Bodnar would continue to engage in illegal acts.

The ability to further expound upon the Derivative Complaint's initial allegations would provide this Court with the specificity required to plead demand futility under Rule 23.1. Under Rule 15(a), this opportunity to cure any perceived deficiencies should be freely given.

## CONCLUSION

Derivative Plaintiff should be permitted to cure any perceived factual deficiencies by submitting an amended complaint. Therefore, Derivative Plaintiff respectfully requests that this Court grant his motion for reconsideration under Local Civil Rule 6.3, and, upon reconsideration, modify the Judgment under Rule 59(e), so as to grant Derivative Plaintiff leave to amend his Derivative Complaint under Rule 15(a).

Dated:  September 5, 2008

*Respectfully submitted,*

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**

By:   /s/ Alexander H. Schmidt
   Daniel W. Krasner (DK-6381)
   Gregory Mark Nespole (GN-6820)
   Alexander H. Schmidt (AS-8304)
   Paulette S. Fox (PF-2145)
   270 Madison Avenue
   New York, New York 10016
   Telephone: (212) 545-4600
   Facsimile: (212) 545-4653

**LAW OFFICES OF BRUCE G. MURPHY**
   Bruce G. Murphy, Esq.
   265 Llwyds Lane
   Vero Beach, Florida  32963
   Telephone:  (772) 231-4202
   Facsimile:  (772) 492-1044

**GAINEY & MCKENNA**
   Thomas J. McKenna, Esq.
   295 Madison Avenue, 4th Floor
   New York, NY 10017
   Tel: (212) 983-1300
   Fax: (212) 983-0383

**COUNSEL FOR DERIVATIVE PLAINTIFF**

/519055

11